UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KATHERINE BLUMMER. <br> *Plaintiff,* | § <br> § <br> § | |
| v. | § | CIVIL ACTION H-09-0326 |
| UNITED SPACE ALLIANCE, LLC <br> *Defendant.* | § <br> § <br> § | |

## ORDER

This disability discrimination case is before the court on defendant United Space Alliance's ("USA's") motion to compel. (Dkt. 10.) Plaintiff Katherine Blummer has filed a response. (Dkt. 13.) For the following reasons, the court denies the motion.

## Background

Blummer is a twenty-nine year old woman who suffers from McCune-Albright Syndrome, a chronic disorder that causes bone deformity and brittleness. Because of the syndrome, Blummer frequently fractures her right femur and is severely limited in her ability to stand or walk.

From May to November 2007, Blummer worked as an aerospace engineer for USA. She claims that USA refused her requests for reasonable accommodation and eventually fired her because of her disability.

After she was fired, Blummer filed discrimination charges with the Equal Employment Opportunity Commission and the Texas Workforce Commission and

received right to sue letters from both agencies. She then filed this lawsuit against USA, alleging violations of the Americans with Disabilities Act and the Texas Labor Code.

Two of USA's requests for production and one interrogatory are at issue in this motion to compel. In Request for Production #10, USA asked Blummer to produce all of her income tax returns and W-2s from 2003 to 2008. In Request for Production #21, USA requested Blummer to sign releases so that it can obtain the her (1) employment records, (2) IRS records, (3) medical, psychiatric, psychological, and counseling records, (4) Texas Department of Human Services records, (5) Social Security disability records, and (6) Social Security earnings records. Some of the releases authorize USA to obtain this information going back ten years. Finally, in Interrogatory #2, USA asked Blummer to state whether she or her attorneys had spoken with various people who might have knowledge about the claims made in her lawsuit.

## Analysis

1. **Blummer does not have to produce her income tax returns**

Because income tax returns contain private information, parties may not be compelled to produce them unless the returns contain information (1) relevant to the lawsuit and (2) not readily obtainable elsewhere. *See, e.g.*, *Gattegno v. PricewaterhouseCoopers, LLP*, 205 F.R.D. 70, 71-72 (D. Conn. 2001).

USA seeks Blummer's tax returns in order to discover her present earnings and her past earnings while at the company, which are relevant to the issue of damages.[1] Blummer does not dispute that her earnings are relevant. Instead, she argues that she does not need to produce her tax returns because she has already given USA her earnings information in the form of pay stubs and W-2s.

The court agrees. Because Blummer's earnings are "readily obtainable" from her W-2s and pay stubs, she need not turn over her tax returns to USA. *See, e.g.*, *E.E.O.C. v. Ceridian Corp.*, 610 F. Supp. 2d 995, 997 (D. Minn. 2008) ("[I]f the party offers to show its earnings through tax forms such as W-2s and 1099s, then disclosure of complete returns is not necessary."); *Gattegno*, 205 F.R.D. at 74; *Terwilliger v. York Int'l Corp.*, 176 F.R.D. 214, 218 (W.D. Va. 1997).

**2.    Blummer does not have to sign any of the releases**

USA's requested releases are overbroad, seek irrelevant information, or seek duplicative information. Consequently, Blummer need not sign any of them.

**a.    IRS records**

As just discussed, USA has access to Blummer's job earnings information from her W-2s and pay stubs. This obviates any need for USA to see Blummer's IRS records, which are relevant only on the issue of damages.

---

[1] Though USA seeks Blummer's tax returns going all the way back to 2003, the court cannot see how Blummer's earnings before her employment with USA in 2007 are relevant to this case.

### b. Social Security earnings records

Blummer's social security earnings for the past ten years, if any, are irrelevant. If Blummer was wrongfully terminated because of her disability, she will be entitled to compensatory damages in the form of back and front pay from USA. Any disability payments Blummer has received in the past ten years do not affect the amount of back or front pay to which she may be entitled.

### c. Employment records

Blummer's employment records are arguably relevant because they could reveal the extent to which other employers have or have not accommodated Blummer's disability. That information could help determine whether USA's accommodations, if any, were reasonable.

But the relevance of Blummer's employment records diminishes with the passage of time; records from many years ago are unlikely to be probative of how much accommodation Blummer's disability may have required in 2007. Moreover, most of Blummer's employment records will not speak to her disability at all but rather irrelevant matters such as her earnings before her employment with USA. USA's proposed employment records release, which is unlimited in time and scope, is overbroad.

### d. Texas Department of Human Services and Social Security disability records

Blummer's Texas Department of Human Services records and Social Security

disability records are arguably relevant because they may shed light on the extent of her disability. But, as with USA's employment records release, these releases are too broad. The Texas Department of Human Services release would allow USA to look at Blummer's entire case record with no limits on time or scope. The social security release would permit USA to access all of Blummer's medical records filed with the Social Security Administration in the past ten years. The court will not force Blummer to authorize the release of all of this medical information when USA can make far more narrowly tailored requests.

    **e.**    **Medical, psychiatric, psychological, and counseling records**

Blummer's medical records, of course, are relevant to the extent that they bear upon her disability. But again, USA's release, which would allow it to access all of Blummer's medical records for the past ten years, is facially overbroad.

As for Blummer's psychiatric, psychological, and counseling records, the parties dispute their relevance. USA argues that evidence of Blummer's mental condition is relevant because she seeks mental anguish damages. Blummer counters that merely asking for mental anguish damages does not permit the discovery of these records, particularly when she does not intend to present any expert testimony of her mental condition at trial.

USA has the better of this argument. Courts have almost universally held that, when a plaintiff seeks mental anguish damages, the defendant is entitled to

discover medical evidence to find out if causes other than the defendant's alleged wrong caused the plaintiff's mental anguish. *See, e.g.*, *Moore v. Chertoff*, No. 00-953, 2006 WL 1442447, at *2 (D.D.C. May 22, 2006) (collecting cases); *Gatewood v. Stone Container Corp.*, 170 F.R.D. 455, 460 (S.D. Iowa 1996). This is so even if the plaintiff represents that she will not present any expert medical testimony at trial.[2] *See Moore*, 2006 WL 1442447, at *2.

But once again, USA's requested release—which seeks Blummer's psychological records for the past ten years, not just for the period immediately surrounding and after her discharge—is far too broad. *See Gatewood*, 170 F.R.D. at 460 ("[T]he temporal scope of a discovery request for medical and mental health information should be appropriately limited."). Accordingly, Blummer need not sign the release.

---

[2] Blummer heavily relies on *Burrell v. Crown Central Petroleum, Inc.*, 177 F.R.D. 376 (E.D. Tex. 1997) for the proposition that medical records showing a plaintiff's mental condition are not discoverable simply when the plaintiff claims mental anguish damages. But the *Burrell* court held only that such records are not subject to disclosure under the mandatory disclosure requirements of Rule 26(a) or the Eastern District of Texas's local initial disclosure rules. *Id.* at 385. It did *not* hold that such medical records can never be discovered under Rule 26(b), which allows parties to request discovery of any nonprivileged matter as long as it is "relevant." Several other courts have distinguished *Burrell* on this basis, *see, e.g.*, *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005), and today this court joins them.

The court is also not persuaded by Blummer's argument that USA may not discover these records because the Fifth Circuit allows plaintiffs to recover mental anguish damages without expert testimony. *See, e.g.*, *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). The fact that a plaintiff can *recover* mental anguish damages without expert medical testimony does not mean a defendant cannot *discover* medical evidence concerning the plaintiff's alleged mental anguish.

3.     **Blummer does not have to answer Interrogatory #2**

In Interrogatory #1, USA asked Blummer to name all persons who might have knowledge of any of the "events, allegations, claims, and causes of action" made in her lawsuit.  In Interrogatory #2, USA asked Blummer whether she or any of her attorneys had talked with any of the persons identified in Interrogory #1.  Blummer refused to answer Interrogatory #2 on the grounds that it sought information protected by the work product doctrine.

Courts have split on the issue of whether identifying individuals an opposing party's attorney has spoken with violates the work product doctrine.  *See In re Hardwood P-G, Inc.*, 403 B.R. 445, 469-70 (Bankr. W.D. Tex. 2009) (discussing the split).  Some courts have held that revealing the identity of an opposing party's interviewees violates the work product privilege because it "reveals that party's litigation strategy." *Id.* at 470 (collecting cases).  Others have held that "the work product doctrine does not shield the identity of persons interviewed by the opposing party if those persons have knowledge of relevant facts." *Id.* (collecting cases).

Several courts have struck a balance between these two positions by distinguishing between interrogatories that ask for the identity of persons with knowledge of relevant facts (which are permissible) and interrogatories that ask for the identity of persons who have been interviewed by the opposing party's

counsel (which violate the work product doctrine). *Id.* at 470-71. Whereas the former type of interrogatory reveals only underlying facts, the latter type reveals

> the potential for significant insights into the . . . lawyers' preparation of their case (and thus their mental processes). . . . [T]he disclosure of all persons interviewed, when coupled with the . . . inevitable disclosure of which of them were anticipated witnesses (and therefore which were not), would teach the opponent just which interviewees' information was viewed as gold and which as dross. It would teach the shape of the discovered party's case as surely as the shape of a container teaches the shape of the gas within.

*American Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n*, 107 F.R.D. 258, 261 (N.D. Ill. 1985).

The court finds this distinction persuasive. In her answer to Interrogatory #1, Blummer gave USA the identities of people who might have knowledge of the issues in the underlying lawsuit. Requiring her to also reveal the identities of people her counsel has interviewed would run too great a risk of informing USA about her counsel's litigation strategy. Blummer need not answer Interrogatory #2 because it might reveal information protected by the work product doctrine.

## Conclusion

For the foregoing reasons, the court denies USA's motion to compel. Each party is to bear its own costs.

Signed at Houston, Texas on August 6, 2009.

Stephen Wm Smith
United States Magistrate Judge