IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KATHERINE BLUMMER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:09-CV-00326 |
| | § | |
| UNITED SPACE ALLIANCE, LLC, | § | |
| | § | |
| Defendant. | § | |

---

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

---

LUCIA ROMANO OSTROM
Attorney in Charge
Texas Bar No. 24033013
Southern Dist. of Texas No.  690123
Advocacy, Inc.
1500 McGowen, Ste. 100
Houston, Texas 77004
(713) 974-7691 Phone
(713) 974-7695 Fax

BRIAN EAST
Texas Bar No. 06360800
Advocacy, Inc.
7800 Shoal Creek Blvd., Ste. 171E
Austin, Texas 78757
(512) 454-4816 Phone
(512) 454-3999 Fax

ATTORNEYS FOR PLAINTIFF

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................... II

TABLE OF AUTHORITIES ................................................................................ IV

I.    INTRODUCTION ....................................................................................... 1

II.   SUMMARY OF THE FACTS .................................................................... 3

III.  SUMMARY OF ARGUMENT ................................................................... 7

IV.   STANDARD OF REVIEW ........................................................................ 8

V.    ARGUMENT AND AUTHORITIES ......................................................... 9

   A.   Ms. Blummer Has a Disability as Defined by the ADA and Chapter 21 in
        that Ms. Blummer is Substantially Limited in the Major Life Activities of
        Walking, Lifting, Standing, Pushing, Running, and Working ....................... 9

      1.   Proof of Impairment ...................................................................... 10

      2.   Proving a Substantial Limitation ................................................... 17

      3.   Plaintiff's Substantial Limitation in Walking ............................... 18

         a.  Limits on time and distance .................................................... 19

         b.  Pain ........................................................................................ 24

         c.  Risk of injury ......................................................................... 28

         d.  Duration ................................................................................. 28

         e.  Severe limp ............................................................................ 29

      4.   Plaintiff's Substantial Limitation in Lifting ................................. 30

      5.   Plaintiff's Substantial Limitation in Standing .............................. 32

      6.   Plaintiff's Substantial Limitation in Pushing ............................... 32

      7.   Plaintiff's Substantial Limitation in Running ............................... 34

8.  Plaintiff's Substantial Limitation in Working.............................................36

B.  Ms. Blummer Met Her Administrative Obligations by Properly Filing a Charge of Discrimination with the EEOC and the TWC .............................41

C.  Ms. Blummer Timely Filed Her Lawsuit within the Applicable Statute of Limitations ...........................................................................................................42

D.  Defendant's Argument that Ms. Blummer's Claim is Frivolous and Made in Bad Faith is Inapplicable to the Facts of this Case........................................43

E.  Defendant Failed to Overcome the Heavy Burden of Demonstrating that Ms. Blummer Failed to Mitigate Her Damages ...................................................44

F.  The After-Acquired Evidence Doctrine Is Not a Bar to Plaintiff's Claim, Nor Is It Applicable in This Case .........................................................................51

G.  Plaintiff's Damages Were Caused by Defendant's Discriminatory Actions, Not by Plaintiff Or Any Third Party...............................................................54

VI.  CONCLUSION ..............................................................................................54

CERTIFICATE OF SERVICE ...............................................................................56

# TABLE OF AUTHORITIES

## Cases

*Allen v. Hamm*, 2006 WL 436054 (D. Md. 2006) ..................................................40

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)....................................... 9, 50

*Babb v. San Francisco Newspaper Agency*, No. C-96-0737,
    1996 WL 788377 (N.D. Cal. Oct. 16, 1996).......................................... 31, 32, 38

*Bartlett v. New York State Bd. of Law Examiners*, 226 F.3d 69 (2d Cir. 2000)......34

*Belk v. Southwestern Bell Telephone Co.*, 194 F.3d 946 (8th Cir. 1999)...............30

*Black v. Roadway Express, Inc.*, 297 F.3d 445 (6th Cir. 2002).............................40

*Bragdon v. Abbott*, 524 U.S. 624 (1998) ......................................................... 18, 35

*Buckhannon Bd. and Care Home, Inc. v. West Virginia
    Dept. of Health and Human Resources*, 532 U.S. 598 (2001) ...........................43

*Carbaugh v. Pangborn Corp.*, No. JFM-00-2719,
    2001 WL 121769 (D. Md. Feb. 12, 2001)...........................................................34

*Carter v. Northwest Airlines, Inc.*, No. 01-C-8655,
    2003 WL 403131 (N.D. Ill. Feb. 20, 2003)..........................................................23

*Caufield v. Ctr. Area Sch. Dist.*, 133 Fed. Appx. 4 (3rd Cir. 2005) .......................46

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................9

*Chasse v. Computer Sciences Corp.*,
    453 F. Supp. 2d 503 (D. Conn. Sept. 28, 2006) .................................................22

*Chollett v. Patterson-UTI Drilling Services, LP,* No. V-08-27,
    2009 WL 4667575 (S.D. Tex. Dec. 1, 2009) ......................................................37

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978) ................................43

*Cobian v. City of New York*, No. 95-Civ.-0166,
    1996 WL 583385 (S.D.N.Y. Oct. 10, 1996) ........................................................28

*Covington v. Gautreaux*, No. 06-812-C, 2009 WL 1530839
  (M.D. La. May 29, 2009) ......................................................20

*Cross v. Samper*, 501 F. Supp. 2d 59 (D.D.C. 2007) ..............................52

*D'Amato v. Long Island R.R. Co.*, No. 99-Civ.-1797(NRB),
  2001 WL 563569 (S.D.N.Y. May 24, 2001) ......................................23

*Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667 (7th Cir. 1998)................40

*Dao v. Auchan Hypermarket*, 96 F.3d 787 (5th Cir. 1996) ....................................41

*Davis v. City of Grapevine*, 188 S.W.3d 748
  (Tex. App.–Fort Worth 2006, *pet. denied*)...........................................35

*Davoll v. Webb*, 194 F.3d 1116 (10th Cir. 1999) .....................................33

*Decorte v. Jordan*, No. 03-1239,
  2005 U.S. Dist. Lexis 12018 (E.D. La. May 26, 2005).........................................50

*Demshick v. Delaware Valley Convalescent Homes, Inc.*, No. 05-2251,
  2007 WL 1244440 (E.D. Pa. Apr. 26, 2007)................................................. 21, 22

*Dibler v. Metwest, Inc.*, No. 3:95-CV-1046,
  1997 U.S Dist. Lexis 16732 (N.D. Tex. April 29, 1997) ....................................49

*Douglas v. DynMcDermott Petroleum Operations Co.*,
  No. 95-1967, 650899 1996 WL (E.D. La. Nov. 7, 1996) ....................................52

*Dropinski v. Douglas County, Nebraska*, No. 8:00-CV-313,
  2001 WL 1580201 (D. Neb. Dec. 5, 2001) ...........................................26

*Duffett v. Mineta*, 432 F. Supp. 2d 293 (E.D.N.Y. 2006)........................................38

*Duprey v. Connecticut Dept. of Motor Vehicles*,
  191 F.R.D. 329 (D. Conn. 2000) ........................................................23

*Duty v. Norton-Alcoa Proppants*, 293 F.3d 481 (8th Cir. 2002)............................47

*Eber v. Harris County Hosp. Dist.*, 130 F. Supp. 2d 847 (S.D. Tex. 2001)............44

v

*E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462 (5th Cir. 2009) ......................43

*E.E.O.C. v. Chevron Phillips Chemical Co, LP*,
570 F.3d 606 (5th Cir. 2009)............................... 10, 11, 17, 18, 19, 25, 27, 29, 38

*E.E.O.C. v. E.I. Du Pont de Nemours & Co*., 480 F.3d 724 (5th Cir. 2007)...........18

*E.E.O.C. v. Heartway Corp*., 466 F.3d 1156 (10th Cir. 2006)................................37

*E.E.O.C. v. Morgan Stanley & Co., Inc.,* No. 01 Civ. 8421(RMB)(RLE),
2002 WL 31778779 (S.D.N.Y. Dec. 11, 2002)....................................................53

*E.E.O.C. v. R.J. Gallagher Co*., 181 F.3d 645 (5th Cir. 1999)...............................36

*E.E.O.C. v. Sharp Mfg. Co. of America*,
534 F. Supp. 2d 797 (W.D. Tenn. 2008) .............................................................19

*E.E.O.C. v. Yellow Freight System, Inc*., No. 98-Civ.-2270(THK),
2002 WL 31011859 (S.D.N.Y. Sept. 9, 2002) ............................................. 25, 28

*E.I. du Pont de Nemours & Co*., 480 F.3d 724 (5th Cir. 2007)...............................22

*Evans v. Potter*, No. RD-02-4043, 2003 WL 24085317 (D. Md. Sept. 9, 2003)....23

*Finical v. Collections Unlimited, Inc*., 65 F. Supp. 2d 1032 (D. Ariz. 1999) .........35

*Fjellestad v. Pizza Hut of America, Inc*., 188 F.3d 944 (8th Cir. 1999).................33

*Flowers v. Southern Regional Physician Services Inc*.,
247 F.3d 229 (5th Cir. 2001) ..............................................................................52

*Frix v. Florida Tile Industries, Inc*., 970 F. Supp. 1027 (N.D. Ga. 1997) .............31

*Gillen v. Fallon Ambulance Service, Inc*., 283 F.3d 11 (1st Cir. 2002) ........... 18, 31

*Gorman v. Meeder Financial Services, Inc*., No. 04-00499,
2007 WL 1657188 (D.N.J. June 5, 2007) ...........................................................53

*Griffin v. Washington Convention Ctr.*, No. 93-2297,
2000 U.S. Dist. Lexis 22713 (D.D.C. July 21, 2000) ..........................................50

*Harding v. Cianbro Corp*., 436 F. Supp. 2d 153 (D. Me. 2006) .............................31

*Harrison v. Ginsberg*, 286 S.E.2d 276 (W. Va. 1982) ...........................................11

*Harvey v. Wal-Mart Louisiana L.L.C.*, No. 3:06-CV-02389,
    2009 WL 3171099 (W.D. La. Sept. 30, 2009) ....................................................33

*Haysman v. Food Lion, Inc.*, 893 F. Supp. 1092 (S.D. Ga. 1995)..........................40

*Hilburn v. Murata Electronics North America, Inc.*,
    181 F.3d 1220 (11th Cir. 1999) ........................................................................35

*Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719 (6th Cir. 2000)............26

*Jenkins v. Cleco Power, LLC*, 487 F.3d 309 (5th Cir. 2007) ........................... 19, 31

*Johnson v. City of Pontiac*, 2007 WL 1013247 (E.D. Mich. Mar. 30, 2007) ........34

*Johnson v. G.D.F., Inc.*, No. 07-C-3996
    2008 WL 4225836 (N.D. Ill. Sept. 12, 2008)............................................... 52, 53

*Johnson v. Maryland*, 940 F. Supp. 873 (D. Md. 1996)..........................................30

*Joffer v. Premier Bankcard Inc.*, No. 06-4265-KES,
    2008 WL 2371149 (D.S.D. June 6, 2008)..........................................................38

*Leslie v. St. Vincent New Hope, Inc.*, 916 F. Supp. 879 (S.D. Ind. 1996)..............37

*Lien v. Kwik Trip, Inc.*, No. 07-CV-457-JCS, 2007 WL 4820967
    (W.D. Wis. Nov. 29, 2007) ...............................................................................21

*Little v. Texas Dept. of Criminal Justice*, 148 S.W.3d 374 (Tex. 2004) ................30

*Loubrido v. Hull Dobbs Co. of Puerto Rico*, 526 F. Supp. 1055 (D.P.R. 1981).....47

*Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170 (10th Cir. 1996)....................31

*Lukens v. National R.R. Passenger Corp.*, No. 99-4102,
    2000 WL 1622745 (E.D. Pa. Oct. 25, 2000) .....................................................33

*Magnant v. Panelmatic Texas, Inc.*, No. H-05-0135, 2006 WL 2434475
    (S.D. Tex. Aug. 22, 2006)..................................................................................22

*Marziale v. BP Products North America, Inc.*, No. 1:05-CV-741, 2007 WL 4224367 (S.D. Ohio Nov. 27, 2007) ................................................................25, 31

*McCray v. DPC Industries, Inc.*, 875 F. Supp. 384 (E.D. Tex. 1995)....................52

*McGarthy v. Ridge*, No. 302-cv-1111P, 2004 WL 1542161 (N.D. Tex. July 7, 2004) ....................................................................20

*McInnis v. Alamo Community College Dist.*, 207 F.3d 276 (5th Cir. 2000) ..........18

*McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995) .............52, 53

*Meling v. St. Francis College*, 3 F. Supp. 2d 267 (E.D.N.Y. 1998) .......................23

*Miles-Hickman v. David Powers Homes, Inc.*, 613 F. Supp. 2d 872 (S.D. Tex. 2009)....................................................44, 48, 49

*Mullins v. Crowell*, 228 F.3d 1305 (11th Cir. 2000) ...............................................39

*NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142 (Tex. 1999) ................................3

*Norden v. Samper*, 503 F. Supp. 2d 130 (D.D.C. 2007)................................. 25, 28

*Ordahl v. Forward Technology Industries, Inc.*, 301 F. Supp. 2d 1022 (D. Minn. 2004) ...............................................................18

*Oszust v. Stone Container Corp*, No. C2-99-1366, 2002 WL 193851 (S.D. Ohio Jan. 17, 2002)................................................................................23

*PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001) ....................................................28

*Patten v. Wal-Mart Stores East, Inc.*, 300 F.3d 21 (1st Cir. 2002) ........................20

*Perez v. Philadelphia Housing Authority*, 677 F. Supp. 357 (E.D. Pa. 1987) . 20, 27

*Picard v. St. Tammany Parish Hosp.*, 611 F. Supp. 2d 608 (E.D. La. 2009)..........29

*Picinich v. UPS*, 583 F. Supp. 2d 336 (N.D.N.Y. 2008), *aff'd* 318 Fed. Appx. 34 (2nd Cir. 2009)............................................................47

*Pickett v. Park Place Entertainment, Corp.*, No. 3:03-CV-0327, 2006 WL 696180 (D. Nev. March 15, 2006) ......................................................33

*Prince v. Claussen*, No. 98-1064, 1999 WL 152282
(10th Cir. March 22, 1999) (unpublished) ..................................................... 33, 34

*Pryor v. Trane Co.*, 138 F.3d 1024 (5th Cir. 1998) ......................................... 32, 33

*Quick v. Albert Einstein Healthcare*, No. 05-4940, 2007 WL 3085868
(E.D. Pa. Oct. 23, 2007) .................................................................................21

*Quinn v. City of Bel Aire, Kan.*, No. 05-1373-JTM,
2006 WL 2433851 (D. Kan. Aug. 21, 2006)....................................................53

*Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1 (1st Cir. 1999) .....................................37

*Ray v. Glidden*, 85 F.3d 227 (5th Cir. 1996) .........................................................32

*Red Deer v. Cherokee County, Iowa*, 183 F.R.D. 642 (N.D. Iowa 1999) ..............53

*Riebe v. E-Z Serve Convenience Stores, Inc.*, No. 00-0358-P-C,
2000 WL 1566516 (S.D. Ala. Sept. 29, 2000) ..................................................35

*Robinson-Scott v. Delta Air Lines, Inc.*, 4 F. Supp. 2d 1183 (N.D. Ga. 1998)........25

*Rohr v. Salt River Project Agricultural Imp. and Power Dist.*,
555 F.3d 850 (9th Cir. 2009) .............................................................................11

*Ross v. Alegent Health*, 380 F. Supp. 2d 1029 (S.D. Iowa 2005)................... 22, 40

*Roush v. Weastec, Inc.*, 96 F.3d 840 (6th Cir. 1996) ..............................................25

*Santos v. Boeing Co.*, No. 02 C 9310,
2004 WL 2005817 (N.D. Ill. Sept. 2, 2004)......................................................53

*Scharff v. Frank*, 791 F. Supp. 182 (S.D. Ohio 1991) ..................................... 40, 41

*Schroeder v. Suffolk County Community College*, No. 07-CV-2060,
2009 WL 1748869 (E.D.N.Y. June 22, 2009)....................................................26

*Schultz v. University of Wisconsin Hospitals and Clinics Authority*,
513 F. Supp. 2d 1023 (W.D. Wis. 2007)............................................................30

*Scott v. Wabash Nat. Corp.*, No. 4:05-CV-55, 2007 WL 1395593
(N.D. Ind. May 10, 2007) ....................................................................21

*Selandia v. Regents of University of Cal.*, No. 031551LKKPANPS,
2006 WL 463127 (E.D. Cal. Feb. 24, 2006) ........................................19

*Sellers v. Delgado College*, 902 F.2d 1189 (5th Cir. 1990) ............................ 44, 46

*Shelton v. General Electric Aerospace Div.*, No. 95-CV-112,
1998 WL 187413 (N.D.N.Y. Apr. 14, 1998) ........................................26

*Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F. Supp. 667 (S.D.N.Y. 1995)...52

*Slivicki v. Principi*, No. 3:04-cv-147,
2006 WL 2780113, at *4 (D.N.D. Sept. 14, 2006) ..............................19

*Smith v. Berry Co.*, 165 F.3d 390 (5th Cir. 1999)..........................................53

*Sparks v. Griffin*, 460 F.2d 433 (5th Cir. 1972).........................................45

*Spears v. Delphi Automotive Systems Corp.*, No. 00-1653,
2002 WL 1880756 (S.D. Ind. Aug. 15, 2002).......................................33

*Stone v. La Quinta Inns, Inc.*, 942 F. Supp. 261 (E.D. La. 1996)..........................52

*Street v. Ingalls Memorial Hosp.*, No. 06-C-2963,
2008 WL 162761 (N.D. Ill. Jan. 17, 2008) .........................................21

*Stubbs v. Regents of University of California*, No. CIV. S-06-1 KK/DAD,
2007 WL 1532148 (E.D. Cal. May 25, 2007).......................................53

*Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999)....................................... 17, 34

*Tatum v. Hospital of University of Pennsylvania*, No. 98-6198,
1999 WL 482320, (E.D. Pa. June 28, 1999) ........................................25

*Taylor v. Books-A-Million, Inc.*, 296 F.3d 376 (5th Cir. 2002)...............................42

*Testerman v. Chrysler Corp.*, No. 95-240,
1997 WL 820934 (D. Del. Dec. 30, 1997) ...........................................32

x

*Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2001) ...10

*Trobia v. Henderson*, 315 F. Supp. 2d 322 (W.D.N.Y. 2004) ...............................22

*United States E.E.O.C. v. SFAILA, LLC*, No. 08-4464,
    2009 WL 3378959 (E.D. La. Oct. 21, 2009)........................................................29

*Van Houten v. Gober*, 106 Fed. Appx. 134 (3d Cir. 2004) .....................................33

*Vaughn v. Sabine County*, 104 Fed. Appx. 980 (5th Cir. 2004)............................47

*Vielma v. Eureka Co.*, 218 F.3d 458 (5th Cir. 2000).............................................41

*Washington v. Davis*, No. 01-1863,
    2002 U.S. Dist. Lexis 20891 (E.D. La. August 5, 2002) ...................................45

*Weeks v. Coury*, 951 F. Supp. 1264 (S.D. Tex. 1996)............................................52

*Wheaton v. Ogden Newspapers, Inc.*,
    66 F. Supp. 2d 1053 (N.D. Iowa 1999) .......................................................... 31, 38

*Wilken v. Cascadia Behavioral Healthcare, Inc.*, No. CV 06-195-ST,
    2008 WL 44648 (D. Or. Jan. 2, 2008).................................................................53

*Williams v. Square D Co.*, No. 304-CV-0162D,
    2005 WL 2219237 (N.D. Tex. Sept. 13, 2005)...................................................35

*Wolz v. Deaton-Kennedy Co.*, No. 98-C-6610,
    2001 WL 699096 (N.D. Ill. June 20, 2001) ......................................................25

*Wysong v. Dow Chemical Co.*, 503 F.3d 441 (6th Cir. 2007) .......................... 31, 33

## Statutes and Rules

42 U.S.C. §§ 12101 *et seq.* ("ADA")..........................................................................1

42 U.S.C. § 12102(1)(B)...........................................................................................10

42 U.S.C. § 12102(1)(C)...........................................................................................10

42 U.S.C. § 12117(a) ................................................................................................42

29 C.F.R. § 1630.2(h)(1) ................................................................ 10, 31

29 C.F.R. § 1630.2(j)(1)(ii) ...............................................................18

29 C.F.R. § 1630.2(j)(2) ........................................................ 18, 20, 29

29 C.F.R. § 1630.2(j)(3)(i) ................................................................36

29 C.F.R. § 1630.2(j)(3)(ii) ...............................................................37

29 C.F.R. § 1630.2(j)(3)(ii)(B) .........................................................36

29 C.F.R. § 1630.2(j)(3)(ii)(C) .........................................................36

29 C.F.R. § 1630.2(i) ............................................... 18, 32, 33, 35

Texas Lab. Code §§ 21.001 *et seq.* ...................................................1

Texas Lab. Code §§ 21.003 ................................................................2

Texas Lab. Code §§ 21.003(6) ...........................................................2

Texas Lab. Code §§ 21.254 ...............................................................42

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KATHERINE BLUMMER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:09-CV-00326 |
| | § | |
| UNITED SPACE ALLIANCE, LLC, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Pursuant to Rule 56, Plaintiff Katherine Blummer respectfully files this Partial Motion for Summary Judgment, and in support shows:

## I.  INTRODUCTION

On February 5, 2009, Plaintiff Katherine Blummer filed the above-referenced action against Defendant United Space Alliance, LLC ("USA" or "Defendant"), alleging that it violated Title I of the Americans with Disabilities Act, 42 U.S.C. §§12101 *et seq.* ("ADA"), and Chapter 21 of the Texas Labor Code, §§21.001 *et seq.* ("Chapter 21").  Plaintiff now files this motion for partial summary judgment, as authorized by Federal Rule of Civil Procedure 56.  While recognizing that a trial is still necessary on some issues, Plaintiff believes that several issues may be resolved as a matter of law.

Summary judgment is sought on seven defenses raised in Defendant's Original Answer, and Plaintiff asks the Court to hold as a matter of law that: (1) she has a disability as defined by the ADA and Chapter 21, in that she is substantially limited in the major life activities of walking, lifting, standing, pushing, running, and working; (2) she properly exhausted her administrative remedies in that she timely filed a charge with the EEOC and the Texas Workforce Commission, received a right to sue from both agencies, and timely filed this suit; (3) her case is not barred by any statute of limitation or doctrine of laches, because she filed her charge and her lawsuit in a timely manner; (4) her case is not frivolous or brought in bad faith, but was instead filed on reasonable grounds to believe that the Defendant discriminated against her and failed to provide her a reasonable accommodation, as required by law; (5) the after-acquired evidence doctrine is not a bar to her claim, nor is it applicable in this case; (6) her damages were caused by Defendant's discriminatory actions, and not by any other party; and (7) Defendant has not met their burden of proof in establishing the Plaintiff's failure to mitigate her damages.

Because Texas law defines disability in the same way as does the ADA, Tex. Lab. Code § 21.003(6), and because one purpose of Texas law is to "provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments," Tex. Lab. Code § 21.003, courts

generally follow federal authorities in interpreting Texas state law.  *See, e.g., NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999).  Thus, the arguments in this brief relating to the ADA apply with equal force to the Plaintiff's state claim.

## II.  SUMMARY OF THE FACTS

Katherine Blummer is a 30-year-old woman who has been an aerospace engineer for approximately five years.  Prior to her employment with Defendant USA, she worked for Boeing for approximately three years.  She then transferred from Boeing to USA in May 2007, and worked there until her termination in November 2007.  Ms. Blummer has now been employed as an engineer by GB Tech, Inc. since April 2009. Ex. A (Blummer Aff. 3, 7-8, Jan. 31, 2010)

While employed by USA, Ms. Blummer was a CEV Avionics Integration Laboratory ("CAIL") Certification Analyst, but for payroll purposes her title was "Engineering Staff I."  As a CAIL Certification Analyst, she wrote requirement documents and design documents with the CAIL Documentation Team, developed test plans, and participated in weekly team meetings for the CEV Avionics Integration Laboratory.  Ex. A (Blummer Aff. 3); Ex. B (Robbins Dep. 23: 2 – 24:5, Nov. 16, 2009); Ex. B (Robbins Dep. Exh. 2 [Bates 10]).

Ms. Blummer has been diagnosed with McCune-Albright Syndrome accompanied by Polyostotic Fibrous Dysplasia since about age fifteen.  Because of

these disorders, she experiences markedly weakened bones, multiple and repeated bone fractures, and deformity of the legs, arms, and skull.  The Polyostotic Fibrous Dysplasia disorder characterized in people with McCune-Albright Syndrome results in constant pain, micro and macro fractures of bone, bone deformity and constant reproduction of bone tissue.  Her femur and hip bones are primarily affected by this disorder.  In fact, Ms. Blummer's right femoral neck has broken so many times that her right leg is approximately four centimeters shorter than her left.  As a result of this disorder, she experiences great pain on a chronic basis. Ex. A (Blummer Aff. 1–3); Ex. C (Lindaman Decl, and attached Exh. B Rep. 1–3, Jan. 27, 2010).

Ms. Blummer has a disability (actual, record of, and regarded as), and this disability was known to Defendant[1].  She is substantially limited in a variety of major life activities, including walking, lifting, standing, pushing, running, and working.  She cannot walk for more than a couple of blocks without a lot of pain, and without risking even greater pain and further serious injury.  She also walks with a severe limp, and often uses a forearm crutch (or occasionally a wheelchair) for assistance. Ex. A (Blummer Aff.1-3).  Ms. Blummer's impairment also affects

---

[1] From the moment Ms. Blummer was hired by USA she informed Defendant of her disability through various means.  *See*  Ex. A (Blummer Aff. 3); Ex. B (Robbins Dep. 29:12–15, 50:1-9,); Ex. D (Vawter Dep. 22:3–25:20, Dec. 14, 2009); Ex. D (Vawter Dep. Exh. 1);Ex. E (Lee Dep. 137:14–138:14, Nov. 17, 2009);  Ex. E (Lee Dep. Exh. 13 [Bates 000229]); Ex. F (Alaniz Dep. 23: 5–16, Dec. 14, 2009);  Ex. G (Corneillie Dep. 40:3–21, Nov. 16, 2009).

her ability to lift objects.  She cannot lift more than ten to fifteen pounds without running the risk of experiencing even greater pain and further injury. Ex. C (Lindaman Decl, and attached Exh. B Rep. 1-3).  She is similarly restricted in standing, pushing, cannot run a single step, and has only ever done sedentary work.

Ms. Blummer began requesting reasonable accommodations from Defendant during the early part of her employment there.  Because of her disability and the accompanying pain, she needed a flexible morning schedule and also the ability to telecommute.  Ex. A (Blummer Aff. 3-4); Ex. D (Vawter Dep. 50:11 – 51:16); Ex. D (Vawter Dep. Exh. 7 [Bates 836]).  Ms. Blummer attempted to work through her manager, her team lead, and Defendant's Health Services and Human Resources departments, in order to get these accommodations in place.[2]  Despite Defendant's awareness of Ms. Blummer's disability, and of her requests for accommodations, Defendant began issuing disciplinary warning letters and notices when Plaintiff's condition worsened or she had medical appointments.  Ex. A (Blummer Aff. 3-4)

Ms. Blummer submitted a Request for Accommodation form to USA Health Services that was completed by her physician.  In it she requested a more flexible work schedule, and to be allowed to work from home on occasion.  Ex. D (Vawter Dep. 50:11 – 51:16); Ex. D (Vawter Dep. Ex. 7 [Bates 836]).  Eventually USA

---

[2] Strikingly, Defendant admits that they did not have a written accommodation policy in place during the time of Ms. Blummer's employ.  *See* Ex. E (Lee Dep. 17: 21 – 18:3).  As such, Defendant did not make it clear to Ms. Blummer how to go about requesting accommodations, and Ms. Blummer needlessly approached several of USA's employees regarding her need for an accommodation.

allowed Ms. Blummer to arrive to work at 8:30 a.m. instead of 8 a.m., if she cut her lunch hour in half and did not work past 5 p.m. without prior manager approval. Ex. B (Robbins Dep. 118:15-23); Ex. E (Lee Dep. 56:10-13). This did not constitute a flexible morning schedule, nor did it allow her to make up needed time in the evening. She then submitted a second Request for Accommodation. This accommodation request, however, was drafted by Defendant's Health Services department with information provided by the company doctor. Ex. D (Vawter Dep. 86:17 – 87:8, 88:6-19); Ex. D (Vawter Dep. Ex. 21 [Bates 887]); Ex. I (Vanderploeg Dep. 31:11 – 32:1, Dec. 14, 2009); Ex. I (Vanderploeg Dep. Ex. 10 [Bates 887]). It stated that Ms. Blummer was requesting "to be able to come to work whenever her pain allows."[3]   USA decided that they would be unable to provide this particular accommodation (which was not the ones Ms. Blummer sought), and she was terminated the next day. Ex. E (Lee Dep. 61:6-19, 64:16 – 65:4); Ex. E (Lee Dep. Ex. 8 [1002-4]).

Although Ms. Blummer would have been able to perform the essential job functions of her position with reasonable accommodations, Defendant refused to consider her requests for a flexible morning schedule or teleworking. The reasonable accommodation request process, which was undocumented and

---

[3] The company physician never met nor spoke with Ms. Blummer.  *See* Ex. I (Vanderploeg Dep. 4:12-14, 11:15–12:6, 28:4-14, 31:11-23); Ex. I (Vanderploeg Dep. Ex. 8 [Bates 989]); Ex. 10 [Bates 887]).

explained to Ms. Blummer in conflicting ways, was not a good-faith effort by Defendant to engage in a flexible interactive process to determine whether, and what, accommodations would work for her to perform her job duties.  Nor did it allow for meaningful input by Ms. Blummer.

### III.  SUMMARY OF ARGUMENT

While recognizing that a trial is still necessary on some issues, several of the defenses in this case can be resolved as a matter of law.

First, the uncontested facts establish that the Plaintiff has an actual disability as defined by the ADA and by parallel state law.  In particular, Plaintiff's genetic disease—McCune-Albright Syndrome with Polyostotic Fibrous Dysplasia—weakens her bones tremendously, and it substantially limits her ability to walk as compared to the average person, because of the very short length of time and distance that she can walk, because of the pain walking causes, because of the risk of serious injury it poses, because she walks with a severe limp, and because her condition is permanent and incurable.  For the same reason Plaintiff is substantially limited in her ability to lift, stand, push, run, and work (the latter supported by uncontested testimony from a vocational expert).

As a matter of law, the Plaintiff has exhausted her administrative remedies, and has satisfied all relevant statutes of limitations, because she filed her charge within 180 days of the adverse action; filed this suit within two years of filing her

charge; filed suit within 60 days of her state-law right to sue; and filed suit within 90 days of receiving her federal right to sue.

The Defendant has pled that this suit is frivolous and brought in bad faith, without pointing out any reason for such argument, and even though the Plaintiff's claims are brought pursuant to statute and supported by sufficient evidence (much of it uncontested).

The Defendant argues that the after-acquired evidence doctrine bars Plaintiff's claim, but under Supreme Court authority it cannot serve as a bar. Moreover, there was no such evidence discovered after the fact, and certainly none severe enough to have justified immediate termination.

Defendant also pleads that any injury in this case is the fault of some (unnamed) third party, although there is no evidence of that, and the Defendant's own witnesses contradict such a claim.

Finally, the Defendant has not developed sufficient evidence that the plaintiff failed to take reasonable steps to mitigate her damages, because it has no evidence that equivalent work existed (other than the job that Plaintiff in fact took), or that she did not take reasonable step to find it.

## IV.  STANDARD OF REVIEW

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law at issue determines the material facts and "only disputes over facts that might affect the outcome of the suit… will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.242, 248 (1986). Summary judgment is proper, then, when no rational tier of fact could find for the non-moving party when analyzing the record in its entirety. *Id.* at 248-249. One of the central purposes of the summary judgment rule is to "isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323–324.

The Plaintiff herein has presented to the court credible evidence in the form of sworn testimony, declarations and affidavits to prove there are no genuine issues of fact regarding several of Defendants alleged defenses.   As such, summary judgment in Plaintiff's favor is proper on several defenses raised in Defendant's Original Answer.

## V.   ARGUMENT AND AUTHORITIES

**A.   Ms. Blummer Has a Disability as Defined by the ADA and Chapter 21 in that Ms. Blummer is Substantially Limited in the Major Life Activities of Walking, Lifting, Standing, Pushing, Running, and Working**

9

Ms. Blummer has a disability if she has a physical impairment that substantially limits a major life activity.  42 U.S.C. § 12102(1)(A).[4]  In an ADA case, disability is assessed at the time of the discriminatory action or failure to accommodate.  *E.E.O.C. v. Chevron Phillips Chemical Co., LP,* 570 F.3d 606, 618 (5th Cir. 2009).

    1.    <u>Proof of Impairment</u>

Under the ADA, an impairment includes any physiological disorder or condition that affects an individual's musculoskeletal system.   29 C.F.R. § 1630.2(h)(1).[5]  Without doubt, Ms. Blummer has a physical impairment.

Ms. Blummer suffers from McCune-Albright Syndrome and resulting Polyostotic Fibrous Dysplasia. *See* Ex. A (Plaintiff Aff. 1); Ex. C (Lindaman Decl, and attached Exh. B Rep. 1); Ex. J (Blummer Dep. 176:5–17).  McCune-Albright Syndrome is caused by a genetic error that prevents the normal regulation of protein in cells, and which in the bones results in an abundance of immature, fibrous bone that is not able to mature and remodel it into normal bone.  This results in the Polyostotic Fibrous Dysplasia aspect of McCune-Albright Syndrome.

---

[4] One can also prove an ADA disability by proving that an individual had a record of such a substantially limiting impairment, or was regarded as having such an impairment. 42 U.S.C. § 12102(1)(B) and (C). However, for purposes of this motion Ms. Blummer is not claiming a "record of" or a "regarded as" disability.

[5] The Fifth Circuit follows the EEOC's definition, noting that its congruence with the prior regulatory definition under the Rehabilitation Act of 1973 gives it added interpretive weight.  *Chevron Phillips*, 570 F.3d at 614 and n.5, *citing Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2001).

Ex. C (Lindaman Decl, and attached Exh. B Rep. 1).[6]  Ms. Blummer was first diagnosed with these conditions at around age 15.  Ex. J (Blummer Dep. 177:1–10).

Fibrous dysplasia is "a disease where healthy bone is replaced by an abnormal proliferation of fibrous tissue resulting in expansion and distortion of the bone structure."  *Harrison v. Ginsberg*, 286 S.E.2d 276, 277–278 (W. Va. 1982).  "Polyostotic" means that it affects multiple bones, in Ms. Blummer's case her right hip and femur, and three ribs in her lower back.  Ex. J (Blummer Dep. 178:8–20).[7]

Ms. Blummer's bones are weak, and on x-rays look very different from normal bones—cobwebby, with fibers extending out; without normal marrow channels; what should be a nice, straight femur is instead lumpy and curved.  Ex. J (Blummer Dep. 178:21–179:18).  Her doctor describes her condition as analogous to trying to build buildings using concrete mixed with Styrofoam, and compares it to having "Brittle Bone Disease" on one side of her body.  Ex. C (Lindaman Decl, and attached Exh. B Rep. 1).

---

[6] More information about McCune-Albright Syndrome and Polyostotic Fibrous Dysplasia is available from numerous sources, including the Fibrous Dysplasia Foundation. *See, e.g.,* https://www.fibrousdysplasia.org/index.php?page=24,and https://www.fibrousdysplasia.org/index.php?page=23.  Courts frequently rely on such web-based information. *See, e.g., Chevron Phillips*, 570 F.3d at 619. *See also Rohr v. Salt River Project Agricultural Imp. and Power Dist.*, 555 F.3d 850, 855 n.2, 859 n.6, 862 n.10 (9th Cir. 2009).

[7] McCune-Albright Syndrome also typically results in skull deformity.  In Ms. Blummer's case her skull did not develop fully; while she was in high school, doctors had to cut the top jaw away from her skull, break her bottom jaw, take bone out of her upper jaw, move things around, and pin and plate it back together.  It has never been fully corrected. The syndrome also results in pigment patches on her skin, and early puberty and accelerated growth, both of which Ms. Blummer had or has. Ex. J (Blummer Dep. 181:21–182:17).

One of the difficulties with her soft bones is that the chronic stresses on the bone leads to micro-fractures. *Id*. These micro-fractures cause constant pain. *Id*.; Ex. A (Blummer Aff. 2). They also cause the bone to continually bend, effectively increasing the stresses on the bone, and effectively making an already-weak bone that much weaker. This in turn leads to further fractures, pain, and bending. Ex. C (Lindaman Decl, and attached Exh. B Rep. 1). As a result, Ms. Blummer has had several major leg fractures, some resulting from the most minor of activities, like lifting a suitcase to check its weight, reaching for the remote control, or even sneezing. Ex J (Blummer Dep. 179:24–181:4); Ex. A (Blummer Aff. 1-2).

One of the most common areas for this to occur is the proximal femur where it leads to the "shepherd's crook" deformity of the proximal femur through the femoral neck; this is what happened in Ms. Blummer's case. By 2007 the alignment of the femoral neck would have made it nearly impossible for the bone to withstand anything much more than her own body weight, and then only for the amount of weight bearing, walking and stresses that one would place on it for minimal activities of daily living, e.g., walking around her residence, doing short shopping errands, bathing, feeding and caring for herself. Anything more extensive than that—such as carrying more than ten to 15 pounds, or walking for more than a couple of minutes—would almost certainly have lead to progressive failure of the bone, bending of the bone, and ongoing pain. Ex. C (Lindaman Decl,

and attached Exh. B Rep. 1-2). This was her state of health despite five or six earlier surgeries.  Ex. J (Blummer Dep. 182:18–183:1).

For a person with Ms. Blummer's severity of the disease, even simple activities of daily living overstress the bone, and cause small fractured through the hip, resulting in new or increased pain and the use of ambulatory-assistive devices like crutches.  It is not uncommon for these patients to have to use such devices permanently because the hip will not withstand their body weight and minimal activities of daily living.  Ex. C (Lindaman Decl, and attached Exh. B Rep. 2).  At the time of the actions the basis of this suit, for example, Ms. Blummer routinely used her crutches to get from her nearby parking to her workspace.   Ex. J (Blummer Dep. 184:10–13).[8]

Ms. Blummer also must avoid stairs.  The only time she could not do so was going down during a fire alarm, for which she used her crutches to avoid putting any weight on her right leg. Ex. C (Lindaman Decl, and attached Exh. B Rep. 2); Ex. J (Blummer Dep. 185:13–23).

As a result of her condition, asking Ms. Blummer to lift or carry anything beyond ten to fifteen pounds would be unreasonable, and her leg would likely not tolerate it.  Similarly, climbing stairs likely would be more than her bone could withstand, and attempting to climb while carrying anything would be unrealistic.

---

[8] She currently uses crutches when her pain gets bad or her leg feels at risk.  Ex. J (Blummer Dep. 183:5–24).

She could only climb stairs by eliminating any weight on her right leg.  Ex. C (Lindaman Decl, and attached Exh. B Rep. 2).

There is no "cure" for Ms. Blummer's condition.  There are treatments that can improve the strength of the bone, but these will not make it "normal bone." The goal of these surgical treatments is not to make the bone normal, but make it "less bad," by adding metal reinforcement rods.  *Id.*

The doctors have recommended such treatment for Ms. Blummer, which she plans on undergoing in the near future.  Ex. A (Blummer Aff. 3); Ex. J(Blummer Dep. 181:5–9).  But even with such treatment the strength of her bone would be nowhere near the strength needed for to perform more than sedentary-type work, and even in sedentary jobs she will need accommodations for the waxing and waning of the always-chronic pain, for the variation in her mobility, and for her ongoing medical care.  Ex. C (Lindaman Decl, and attached Exh. B Rep. 2).

Ms. Blummer's pain is constant, but its severity ebbs and flows.  Most days she is able to work normally, although she must take very strong, prescription pain medications.  When her pain is at its worst, Ms. Blummer cannot work.  On other days when the pain is bad, she can work from home, where she can avoid moving around, and can control the pain by use of heat packs, a TENS unit, and in other ways.  Ex. J (Plaintiff Dep. 164:21–165:7); Ex. A (Blummer Aff. 2-3)

In summary, her doctor states that Ms. Blummer has:

14

a significant disability that severely impacts her ability to work; severely impacts her ability for activities of daily living and I would expect this disability not only to be permanent, but to actually be progressive over her adult years.  It severely impairs her ability to sit, stand, walk, lift, and climb stairs, etc. compared to persons in the general public.

Ex. C (Lindaman Decl, and attached Exh. B Rep. 3).  It is worth noting that Dr. Lindaman is himself a person with Fibrous Dysplasia, and he serves on the medical advisory board of the national Fibrous Dysplasia Foundation.  *See* https://www.fibrousdysplasia.org/index.php?page=49.

The Defendant does not dispute this evidence, and did not even designate an expert witness as to her disability.  Ex. K (Letter from Defense Counsel, Flynn Flesher) (Nov.2, 2009).[9]   In fact, on the issue of disability the Defendant's testimony was remarkably consistent with that of Ms. Blummer and her expert, as described below.

The Defendant's contract physician,[10] although not an expert,[11] was aware that Ms. Blummer "suffers from fibrous dysplasia and experiences pain because of that condition, and is under the care of her physicians to manage that."  Ex. I (Vanderploeg Dep. 12:7–11; 13:7–12).  He further knew that she could not walk

---

[9] The Defendant's sole expert, Whitney Smith, denies expertise in the medical field, and admits that he "must accept the opinion of Blummer's experts at face value."  Ex. L (Smith Rep. 12, Nov. 2, 2009).

[10] Ex. I (Vanderploeg Dep. 6:15–7:5).

[11] Dr. Vanderploeg has never treated anyone with Ms. Blummer's condition, has no special training in it, has not read the medical literature about it, and was not hired to give any expert opinions.  Ex. I (Vanderploeg Dep. 10:16–11:14).

very far, and had no disagreement with her testimony that: she routinely experienced a lot of pain in her legs, hips, and back, *id*., 13:16–21; could not climb stairs routinely without experiencing severe pain or being at risk of injury, *id*., 13:22–14:1; and could not walk for more than about two blocks without experiencing severe pain or being at risk for injury.  *Id*., 12:22–13:6.

The head of Defendant's HR department[12] knew that the Ms. Blummer was on pain medications, e.g., Ex. E (Lee Dep. 135:22–25), and she admitted that she had no reason to doubt that Ms. Blummer had a lot of pain in her leg, hip, and back.  *Id*., 136:1–4.

Nurse Vawter was Defendant's in-house medical director[13] and its accommodations representative,[14] and she likewise knew that Ms. Blummer suffered from a lot of pain in her leg, hip, and back, and she also knew the details of the pain medications Ms. Blummer took.  Ex. D (Vawter Dep. 20:13–21:1; 21:2–5).  In the nurse's words, "because she had so many pain problems, that, you know, I knew she was hurting."  *Id*., 97:1–2.  Nurse Vawter further admitted that Ms. Blummer had a "serious limp," *id*., 19:14–16; *see also* 26:13–14 ("Yes, I saw that she limped.  I saw that she was uncomfortable, and I did not doubt her …"), and testified that she had no reason to doubt that Ms. Blummer could not walk for

---

[12] Ex. E (Lee Dep. 5:7–14).
[13] Ex. D (Vawter Dep. 8:12–9:8).
[14] Ex. D (Vawter Dep. 12:2–5; 13:9–11).

more than two block, *id.*, 19:17–24, or use stairs without experiencing pain or possible injury. *Id.*, 21:6–13. Again in the nurse's own words, "I would see her in the hall and it would look like she could barely walk." *Id.*, 61:17–19.

Ms. Blummer's supervisor Robbins[15] testified similarly as to Ms. Blummer's pain and walking limitations. Ex. B (Robbins Dep. 32:3–34:10). He, too, admitted that she had a serious limp. *Id.*, 32:7–13. Ms. Blummer's tech leader[16] Corneille testified similarly. Ex. G (Corneille Dep. 43:19–46:15). Corneille also testified to her understanding that on occasion when the pain was bad, Ms. Blummer would go to see the nurse, *id.* 70:18–71:3, and Corneille recalled an occasion when the Ms. Blummer was in so much pain that she was worried that she could not continue to work that day. *Id.*, 53:24–54:9.

### 2. Proving a Substantial Limitation

Although "substantial" means considerable, or to a large degree, *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 491 (1999), an impairment need not rise to the level of an "utter inability" in order to be substantially limiting. *Chevron Phillips*, 570 F.3d at 619.

A person is substantially limited in a major life activity if he or she is significantly restricted in the condition, manner or duration of performing the

---

[15] Ex. B (Robbins Dep. 12:19–24); Ex. B (Robbins Dep. Exh. 1 [Bates 460]).
[16] Ex. G (Corneille Dep. 8:8–11).

activity as compared to the average person in the general population.  29 C.F.R. § 1630.2(j)(1)(ii); *McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 280 (5th Cir. 2000).  In determining whether an impairment is substantially limiting, the following factors are considered: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact of the impairment.  29 C.F.R. § 1630.2(j)(2).

When the impairment results in significant limitations, the definition is met, even if the difficulties are not insurmountable.  *Bragdon v. Abbott*, 524 U.S. 624, 641 (1998).  Thus, the focus is not on whether the individual participates in a major life activity despite an impairment, but rather, whether the individual faces significant obstacles when doing so.  *Gillen v. Fallon Ambulance Service, Inc*., 283 F.3d 11, 22 (1st Cir. 2002); *Ordahl v. Forward Technology Industries, Inc*., 301 F. Supp. 2d 1022, 1028 (D. Minn. 2004) ("The ADA does not require that a plaintiff demonstrate total inability to perform daily activities in order to be considered disabled.  Rather, the central inquiry is whether when compared to the activities of a non-impaired person, the plaintiff is substantially restricted in his ability to perform those same activities.").  *See also Chevron Phillips*, 570 F.3d at 619.

3.    Plaintiff's Substantial Limitation in Walking

Under the ADA, walking is a major life activity.  29 C.F.R. § 1630.2(i); *E.E.O.C. v. E.I. Du Pont de Nemours & Co*., 480 F.3d 724, 730 (5th Cir. 2007).

18

Given the undisputed evidence in this case, Ms. Blummer has a disability because she is substantially limited in walking for a variety of independently sufficient reasons—the severe restrictions on the time and distance she can walk, the pain she experience on walking, the risk of injury from her walking, the incurable and permanent nature of her condition, and the severe limp she has when she does walk.

        a.     *Limits on time and distance*

A person is substantially limited in a major life activity if the activity can only be done for short periods of time. *See, e.g., Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (plaintiff could sit for only three hours a day was substantially limited in sitting); *E.E.O.C. v. Sharp Mfg. Co. of America*, 534 F. Supp. 2d 797, 802 (W.D. Tenn. 2008) (pain after a few minutes of standing, and inability to stand more than three hours in an eight-hour shift); *Slivicki v. Principi*, No. 3:04-cv-147, 2006 WL 2780113, at *4 (D.N.D. Sept. 14, 2006) (ability to stand only an hour or two per day);[17] *Selandia v. Regents of University of Cal*., No. 031551LKKPANPS, 2006 WL 463127, at *4–5 (E.D. Cal. Feb. 24, 2006) (ability to sit for less than an hour reflected substantial limitation), *adopted*, No. 031551LKKPANPS, 2006 WL 845802 (E.D. Cal. March 31, 2006).

---

[17] Although *Slivicki* was decided under the Rehabilitation Act of 1973, that statute has the same definition of disability as the ADA's, so such authorities are frequently relied on in interpreting the ADA. *Chevron Phillips*, 570 F.3d at 614 n.5.

19

This same analysis applies to limitations in walking. Under the ADA, walking is substantially limited if, for example, an individual "can only walk for very brief periods of time." 29 C.F.R. Part 1630 App., § 1630.2 (j). *See also Patten v. Wal-Mart Stores East, Inc*., 300 F.3d 21, 23 (1st Cir. 2002) (finding that Charcot-Marie-Tooth disease substantially limited "ability to walk or stand for a long time," resulting in leg pains and an "unusual gait"); *Covington v. Gautreaux*, No. 06-812-C, 2009 WL 1530839, at *8–9 (M.D. La. May 29, 2009) (doctor testified that plaintiff's scoliosis was severe and permanent, resulted in substantial limitations in walking, which "had affected, and could affect in the future, the plaintiff's gait/ability to walk."); *McGarthy v. Ridge*, No. 302-cv-1111P, 2004 WL 1542161, at *4 (N.D. Tex. July 7, 2004) (as a result of leg injury, plaintiff had substantial reconstruction and replacement of various bones in her leg, had to use walking aids, had great difficulty walking, and "[u]nder any reasonable analysis … is substantially limited in the major life activity of walking when compared with the 'average person.'"); *Perez v. Philadelphia Housing Authority*, 677 F. Supp. 357, 360–361 (E.D. Pa. 1987) (plaintiff whose considerable pain affected her ability to walk had a disability under the Rehabilitation Act of 1973);[18] EEOC Enforcement Guidance: Workers' Compensation and the ADA, Question 14, Ex. B

---

[18] *Perez* was cited approvingly in EEOC guidance on the ADA. *See* EEOC Compliance Manual, at § 902.4(c)(1), http://www.eeoc.gov/policy/docs/902cm.html.

(July 6, 2000) (assuming that badly fractured ankles that partially heal but result in inability "to walk and stand for more than short periods of time" is a disability).[19]

As noted above, Ms. Blummer cannot walk more than two minutes, or two blocks, without risking severe pain or injury. Ex. A (Blummer Aff. 2); Ex. C (Lindaman Decl, and attached Exh. B Rep. 1); Ex. J (Blummer Dep. 183:25 – 184:4).   This meets or exceeds the walking limitations found to be an ADA disability by numerous courts.  *See, e.g., Street v. Ingalls Memorial Hosp*., No. 06-C-2963, 2008 WL 162761, at *6 (N.D. Ill. Jan. 17, 2008) (inability to walk more than **100–300 feet** at a time); *Lien v. Kwik Trip, Inc*., No. 07-CV-457-JCS, 2007 WL 4820967, at *1 and 4 (W.D. Wis. Nov. 29, 2007) (plaintiff could not more than a **few blocks** at a time without using a walker and sitting every couple of clock); *Quick v. Albert Einstein Healthcare*, No. 05-4940, 2007 WL 3085868, at *12 (E.D. Pa. Oct. 23, 2007) (could walk on level ground for only the **distance of three houses** before needing to stop); *Scott v. Wabash Nat. Corp*., No. 4:05-CV-55, 2007 WL 1395593, at *6 (N.D. Ind. May 10, 2007) (court found disability based on plaintiff's permanent partial impairment for worker's comp, and on doctor's restriction of maximum **two hours per day** of walking, and no more than **30 minutes at a time**); *Demshick v. Delaware Valley Convalescent Homes, Inc*., No. 05-2251, 2007 WL 1244440, at *7 (E.D. Pa. Apr. 26, 2007) (no bright line

---

[19] Available online at http://www.eeoc.gov/policy/docs/workcomp.html.

rule, but sufficient evidence that plaintiff with Meniere's disease was significantly limited in walking compared to the general population; she could typically walk **two blocks**, but not at all during a severe attack);[20] *Chasse v. Computer Sciences Corp.*, 453 F. Supp. 2d 503, 516 (D. Conn. Sept. 28, 2006) ("Assuming that the average person is able to stand or walk for periods longer than **thirty minutes** without taking a fifteen minute break, plaintiff's documented impairment substantially restricted her ability to perform the major life activity of walking"); *Magnant v. Panelmatic Texas, Inc*., No. H-05-0135, 2006 WL 2434475, at \*10 (S.D. Tex. Aug. 22, 2006) (sufficient evidence that heart condition, knee problems, and obesity substantially limited ability to walk, in that plaintiff was restricted from walking more than **100 yards**); *E.I. du Pont de Nemours & Co*., 406 F. Supp. 2d at  656 ("[I]nability to walk more than **two city blocks** without experiencing shortness of breath is significantly limited in walking as compared to an average person."), *aff'd in part on other grounds*, 480 F.3d 724 (5th Cir. 2007); *Ross v. Alegent Health*, 380 F. Supp. 2d 1029, 1036 (S.D. Iowa 2005) (sufficient evidence of substantial limitation in walking where plaintiff could only walk **one or two blocks** before she felt pain and then had to sit down for 15–20 minutes); *Trobia v. Henderson*, 315 F. Supp. 2d 322, 328–330 (W.D.N.Y. 2004) (court found

---

[20] The court in *Demshick* observed that "[o]ther courts have held that a plaintiff is substantially limited when, like Demshick, she is only able to walk up to two city blocks."  2007 WL 1244440, at \*7.

22

disability based on inability to walk more than **30 minutes** without resting); *Carter v. Northwest Airlines, Inc.*, No. 01-C-8655, 2003 WL 403131, at *3 (N.D. Ill. Feb. 20, 2003) (plaintiff walked with a cane, experienced burning and numbness in his foot, and could only stand for **ten minutes**); *Evans v. Potter*, No. RD-02-4043, 2003 WL 24085317, at *6 (D. Md. Sept. 9, 2003) (sufficient evidence based on the inability to walk more than **15 minutes** at slow speed); *Oszust v. Stone Container Corp*, No. C2-99-1366, 2002 WL 193851, at *5–7 (S.D. Ohio Jan. 17, 2002) (sufficient evidence based on inability to walk further than **75 yards** without significant difficulty and pain); *D'Amato v. Long Island R.R. Co.*, No. 99-Civ.-1797(NRB), 2001 WL 563569, at *5–6 (S.D.N.Y. May 24, 2001) (plaintiff with heart condition limited to walking **50 to 100 feet** sufficient evidence); *Meling v. St. Francis College*, 3 F. Supp. 2d 267, 273 (E.D.N.Y. 1998) (plaintiff's knee problem caused her to limp and restricted her ability to walk to *two blocks* at a time, which would take her **five to ten minutes**).  *See also Duprey v. Connecticut Dept. of Motor Vehicles*, 191 F.R.D. 329, 33–36 (D. Conn. 2000) (for purposes of class certification, requirement for disability parking permit, i.e., inability to walk **200 feet**, was equivalent of substantial limitation in walking under the ADA).[21]

---

[21] It is worth noting that Texas law is to the same effect, stating that a person is substantially impaired in the ability to ambulate if the person (a) cannot walk 200 feet without stopping to rest; cannot walk without the use of or assistance from an assistance device, including a brace, cane, or crutch; or is severely limited in the ability to walk because of an orthopedic condition.  Texas Transportation Code § 681.001(5)(A), (B), and (G).

Given that the Defendant has offered no controverting evidence, and designated no contrary expert witness, and given that its own witnesses do not dispute the Ms. Blummer's limitations,[22] there is no real factual dispute in this case, and she is entitled to summary judgment finding her substantially limited in the major life activity of walking.

      b.   *Pain*

There are other reasons why Ms. Blummer is substantially limited in walking.  She has essentially constant pain when she walks.  Ex. A (Blummer Aff. 2).  But she is also *medically unable to walk for more than a couple of minutes*, not because she gets tired, but because otherwise she risks bone fractures and even more severe pain. Ex. C (Lindaman Decl, and attached Exh. B Rep. 1).  That translates to a maximum walking distance of two blocks [without crutches].  Ex. J (Plaintiff Dep. 183:25–184:4).

Ms. Blummer's pain is constant, although its severity ebbs and flows.  Most days she is able to work normally, although she must take very strong, prescription pain medications.  When her pain is at its worst, Ms. Blummer cannot work.  On other days when the pain is bad, she can work from home, where she can avoid moving around, and can control the pain by use of heat packs, a TENS unit, and in

---

[22] See § V(A)(1) above.

other ways.  Ex. J (Plaintiff Dep. 164:21–165:7).; Ex. A (Blummer Aff. 2). Again, the Defendant does not dispute this.  See § A(1) above.

A person is substantially limited in a major life activity if it can be performed only with a lot of pain. *See, e.g., Chevron Phillips*, *supra*, 570 F.3d at 620; *Roush v. Weastec, Inc*., 96 F.3d 840, 844 (6th Cir. 1996) (condition caused substantial pain such that plaintiff could not engage in a major life activity without medication, and even with medication she had pain, for which she sought medical treatment); *Norden v. Samper*, 503 F. Supp. 2d 130, 151–152 (D.D.C. 2007) (in combination, various problems rendered plaintiff "unable to function as a normal person and to live free from constant pain and fear"); *Marziale v. BP Products North America, Inc*., No. 1:05-CV-741, 2007 WL 4224367, at *5 (S.D. Ohio Nov. 27, 2007) (plaintiff restricted in ability to cook and wash dishes because bending over the sink caused her back pain); *E.E.O.C. v. Yellow Freight System, Inc*., No. 98-Civ.-2270(THK), 2002 WL 31011859, at *17 (S.D.N.Y. Sept. 9, 2002) (plaintiff could sit for, at most, forty-five minutes without experiencing pain); *Wolz v. Deaton-Kennedy Co*., No. 98-C-6610, 2001 WL 699096, at *4–7 (N.D. Ill. June 20, 2001) (finding sufficient evidence in testimony of pain associated with fibromyalgia); *Tatum v. Hospital of University of Pennsylvania*, No. 98-6198, 1999 WL 482320, at *4 (E.D. Pa. June 28, 1999) (26-year condition causing extreme pain); *Robinson-Scott v. Delta Air Lines, Inc*., 4 F. Supp. 2d 1183, 1187 (N.D. Ga.

1998); *Shelton v. General Electric Aerospace Div.*, No. 95-CV-112, 1998 WL 187413, at *9 (N.D.N.Y. Apr. 14, 1998).  *See also Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 725 (6th Cir. 2000); *Dropinski v. Douglas County, Nebraska*, No. 8:00-CV-313, 2001 WL 1580201, at *3 (D. Neb. Dec. 5, 2001) (noting that record established that plaintiff suffered from chronic intermittent disc-related lumbar pain symptoms and chronic pain syndrome that will persist throughout the remainder of his life), *aff'd*, 298 F.3d 704 (8th Cir. 2002).

Ms. Blummer has essentially constant pain when she walks, and cannot walk more than two minutes, or two blocks, without risking even more severe pain. Under the above authorities her pain suffices to establish a substantial limitation in walking.  See also *Schroeder v. Suffolk County Community College*, No. 07-CV-2060, 2009 WL 1748869, at *7 (E.D.N.Y. June 22, 2009) (plaintiff had periodic foot pain and numbness every day, used various means to relieve the pain, used a cane outside work, and his condition was long-term and likely permanent).

The EEOC Compliance Manual makes the same point. *See, e.g.* EEOC Compliance Manual § 902.4(d), Ex. 5 (Nov. 21, 2009), http://www.eeoc.gov/policy/docs/902cm.html:

> Although CP can now walk unaided, she can do so only for three to five minutes without experiencing excruciating pain. Her physician predicts that CP's condition, which may improve at some point in the future, will remain like this indefinitely. CP has an ankle impairment that substantially limits her ability to walk.

26

*See also id.*, at § 902.4(c), Ex. 2:

> CP, who has sickle cell anemia, frequently experiences severe back and joint pain. As a result of the sickle cell disease, CP often cannot walk for more than very short distances. CP's impairment (sickle cell anemia) substantially limits his ability to walk. The average person in the general population can walk for more than very short distances.

*See also id.*, at § 902.4(c)(1):

> For example, the plaintiff in *Perez v. Philadelphia Housing Authority* sustained a back injury that resulted in considerable pain. The evidence indicated that the plaintiff's back pain restricted "her ability to walk, sit, stand, drive, care for her home and child, and engage in leisure pastimes." As a result, the court found that the plaintiff was an individual with a disability. (citations omitted)

Moreover, Ms. Blummer's pain sometimes flares to severe levels.  One living with such a condition is clearly substantially limited in walking.  *See, e.g.,* Questions and Answers about Health Care Workers and the Americans with Disabilities Act, Question 1, Ex.1 (EEOC Feb. 26, 2007), http://eeoc.gov/facts/health.care.workers.html (employee's multiple sclerosis substantially limits her walking and standing because during flare-ups she is unable to stand or walk for several days).  *See also Chevron Phillips*, 570 F.3d at 618 ("Many courts have recognized that relapsing-remitting conditions … can constitute ADA disabilities depending on the nature of each individual case.").

The above facts and authorities, and the lack of contrary evidence regarding Ms. Blummer's pain, reinforces the fact that she has substantial limitation in walking.

### c.   *Risk of injury*

Likewise, a person is substantially limited in a major life activity performing it will result in health problems.   *See, e.g., Norden*, 503 F. Supp. 2d at 151 (plaintiff with dengue fever could not have sexual relations without a risk of bleeding); *Cobian v. City of New York*, No. 95-Civ.-0166, 1996 WL 583385, at *3 (S.D.N.Y. Oct. 10, 1996) (despite use of cane, extensive walking caused plaintiff's knees to buckle and her legs to cramp, and her back would sometimes "go out," causing her to fall).  Every time Ms. Blummer walks she is at risk of fracturing her leg, which sometimes requires surgery, and which will only accelerate the progression of her condition.  One who must face such a risk simply by walking is surely substantially limited.[23]

### d.   *Duration*

One of the factors in determining whether a limitation is substantial is its duration, 29 C.F.R. § 1630.2(j)(2), meaning "the length of time an impairment persists."  *Yellow Freight*, 2002 WL 31011859, at *18 *citing* 29 C.F.R. Pt. 1630

---

[23] *See also PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001), in which the Supreme Court observed that pro golfer Casey Martin's degenerative circulatory disorder, which caused pain and atrophy in one leg, was a disability under the ADA because walking not only caused him pain, fatigue, and anxiety, but also created a risk of serious injury.  *Id.* at 668.

App., § 1630.2(j)).  Ms. Blummer's condition is permanent and incurable. Ex. C (Lindaman Decl, and attached Exh. B Rep. 2).

The permanence of her condition "weighs in favor of finding Plaintiff disabled," and a permanent condition with continual pain "weighs strongly in favor of finding a substantial limitation." *Id. See also Picard v. St. Tammany Parish Hosp.*, 611 F. Supp. 2d 608, 619 (E.D. La. 2009) (permanent nature of impairment supports disability finding); EEOC Technical Assistance Manual, § 2.2(a)(iii) (back injury resulting in pain that permanently restricts ability to walk found by a court to be an individual with a disability).  Likewise, the fact that a condition is incurable also weighs in favor of a disability finding.  *Compare Chevron Phillips*, 570 F.3d at 619 (citing websites confirming fact that chronic fatigue syndrome has no known cure).  *See also United States E.E.O.C. v. SFAILA, LLC*, No. 08-4464, 2009 WL 3378959, at *9 (E.D. La. Oct. 21, 2009).

e.  *Severe limp*

Another factor in determining disability is the manner in which an individual must perform the major life activity.  29 C.F.R. § 1630.2(j)(2).  "Manner" is defined as "natural or normal behavior," or "the mode or method in which something is done or happens."  Webster's Third New International Dictionary— Unabridged (Merriam-Webster 1986).  Ms. Blummer's impairment severely affects her gait, which is "the manner of walking, running, or moving on foot."  *Id.*

She walks with a severe limp, both because of her pain and because of her need to avoid placing weight on her right leg.  Ex. A (Blummer Aff. 2).  Many of the Defendant's witnesses admitted to Ms. Blummer's severe limp.  See § A(1) above.

Courts have found that similar evidence supports finding a substantial limitation in walking.  *See, e.g., Belk v. Southwestern Bell Telephone Co*., 194 F.3d 946, 950 (8th Cir. 1999) (plaintiff's "gait is hampered by a pronounced limp");[24] *Johnson v. Maryland*, 940 F. Supp. 873, 877 (D. Md. 1996) ("[T]he Court finds that Johnson's walking with a limp constitutes a substantial limitation of a major life activity and thus a disability under the ADA for purposes of the Motion for Summary Judgment."), *aff'd per curiam*,  No. 96-2655, 1997 WL 240823 (4th Cir. May 12, 1997) (unpublished).  *See also* EEOC Technical Assistance Manual, § 9.2 ("[I]f the injury caused a permanent limp, the worker might be considered disabled under the ADA if the limp substantially limited his walking, as compared to the average person in the general population.").[25]

4.    Plaintiff's Substantial Limitation in Lifting

---

[24] *Belk* was cited favorably in *Little v. Texas Dept. of Criminal Justice*, 148 S.W.3d 374, 384 (Tex. 2004), and the court noted her limp on remand in that case, at 177 S.W.3d 624, 635 (Tex.App.—Houston [1st Dist.] 2005, no writ).

[25] In the instant case the Ms. Blummer must use a forearm crutch on frequent occasions, including much of the time she was employed by the Defendant. Ex. A (Blummer Aff. 2).  This certainly does not lead to a contrary result.  *See, e.g., Schultz v. University of Wisconsin Hospitals and Clinics Authority*, 513 F. Supp. 2d 1023, 1034 (W.D. Wis. 2007) ("Although Plaintiff's crutches allow her to move about in an upright position and function in a similar manner as if she were moving about using her feet, the fact remains that she relies upon her upper body strength alone to do so. Given Plaintiff's inability to support any of her body weight with her legs and complete reliance on upper body strength for ambulation, Plaintiff's use of her crutches no more allows her to 'walk' in a traditional sense than her use of a wheelchair does").

Lifting is a major life activity. 29 C.F.R. Part 16300 App. § 1630.2(h); *Wysong v. Dow Chemical Co*., 503 F.3d 441, 452 n.7 (6th Cir. 2007); *Gillen v. Fallon Ambulance Service, Inc*., 283 F.3d 11, 21 (1st Cir. 2002); *Lowe v. Angelo's Italian Foods, Inc*., 87 F.3d 1170, 1173 (10th Cir. 1996). The Fifth Circuit has also recognized as much. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).

Ms. Blummer is restricted from lifting more than ten to 15 pounds. Ex. C (Lindaman Decl, and attached Exh. B Rep. 1); Ex. J (Blummer Dep. 186:18–187:4). Similar restrictions have been held to be substantial limitations in lifting. *See, e.g., Lowe v. Angelo's Italian Foods, Inc*., 87 F.3d 1170, 1173–1174 (10th Cir. 1996) (plaintiff who could not lift more than **15 pounds** raised fact issue of disability); *Marziale*, 2007 WL 4224367, at \*5 (**15 pound** lifting restriction, together with description of day-to-day effects, reflected a substantial limitation); *Harding v. Cianbro Corp*., 436 F. Supp. 2d 153, 178 (D. Me. 2006) (restriction on lifting **ten pounds** more than 21 minutes per hour, and heavier weights more than 9 minutes per hour, citing numerous authorities); *Wheaton v. Ogden Newspapers, Inc*., 66 F. Supp. 2d 1053, 1062–1063 (N.D. Iowa 1999) (**ten pound** lifting restriction may be disability). *See also Frix v. Florida Tile Industries, Inc*., 970 F. Supp. 1027, 1033–1034 (N.D. Ga. 1997) (plaintiff was disabled because **25 pound** lifting restriction prevented performing entire class of jobs); *Babb v. San Francisco*

31

*Newspaper Agency*, No. C-96-0737, 1996 WL 788377, at *3 (N.D. Cal. Oct. 16, 1996) (condition that prevents heavy labor is substantially limiting, and plaintiff's ability to perform other jobs does not preclude him from showing that he was impaired in ability to work; plaintiff unable to safely lift more than 50 pounds). *See also Testerman v. Chrysler Corp*., No. 95-240, 1997 WL 820934, at *11 (D. Del. Dec. 30, 1997) ("A review of these cases reveals that the ambiguity in finding a disability in back injury cases generally begins with lifting restrictions between 15 and 25 pounds").[26]

### 5.    Plaintiff's Substantial Limitation in Standing

Ms. Blummer is also substantially limited in standing, and cannot stand more than ten or fifteen minutes without pain.  Ex. J (Blummer Dep. 185:5–12). This is significantly different that the average person's abilities, and as shown above such temporal restrictions are substantially limiting.

### 6.    Plaintiff's Substantial Limitation in Pushing

Pushing fits in the definition of a major life activity, i.e., a basic activity that the average person in the general population can perform with little or no difficulty.  29 C.F.R. Part 1630 App., §1630.2(i).  The Fifth Circuit has suggested that pushing is a major life activity.  *Pryor v. Trane Co*., 138 F.3d 1024, 1026–

---

[26] Nor is *Ray v. Glidden*, 85 F.3d 227, 229 (5th Cir. 1996), to the contrary.  In that case the plaintiff's doctor had recommended lifting between five to ten pounds, but he also stated that "although Ray would be unable to lift 44-56 pound containers continuously all day, he would be able to do so for one to three and one-half hours per day."

1027 (5th Cir. 1998).  *See also Harvey v. Wal-Mart Louisiana L.L.C.*, No. 3:06-CV-02389, 2009 WL 3171099, at *5 n.7 (W.D. La. Sept. 30, 2009).  It is also similar to other things that have been recognized as major life activities, e.g., reaching,[27] grasping,[28] general use of arms,[29] throwing,[30] using ones limbs,[31] carrying,[32] lifting,[33] and performing manual tasks.[34]

Ms. Blummer is also substantially limited in her ability to push. For example, she is unable to push a vacuum, and must rely on an automated vacuum, or on her neighbor's assistance, to vacuum her house.  Ex. J (Blummer Dep. 22:1–10; 187:15–24).

A limitation in pushing also supports the fact that Ms. Blummer is substantially limited in the separate major life activity of lifting.  *See, e.g., Wysong*, 503 F.3d at 452–453 (doctor's restriction on lifting, pushing, pulling, or tugging

---

[27] 29 C.F.R. pt 1630 App § 1630.2(i); *Fjellestad v. Pizza Hut of America, Inc*., 188 F.3d 944, 948 (8th Cir. 1999); *Lukens v. National R.R. Passenger Corp*., No. 99-4102, 2000 WL 1622745, at *3, 5 (E.D. Pa. Oct. 25, 2000).  *See also Davoll v. Webb*, 194 F.3d 1116, 1134 (10th Cir. 1999) (approving jury instruction including reaching).

[28] *Van Houten v. Gober*, No. 98-CV-0270, 2003 WL 21488670, at *4 (E.D. Pa. June 6, 2003), *aff'd*, 106 Fed. Appx. 134 (3d Cir. 2004).

[29] *Id*.

[30] *Prince v. Claussen*, No. 98-1064, 1999 WL 152282, at *5 (10th Cir. March 22, 1999) (unpublished).

[31] *Spears v. Delphi Automotive Systems Corp*., No. 00-1653, 2002 WL 1880756, at *9 (S.D. Ind. Aug. 15, 2002).

[32] *Pickett v. Park Place Entertainment, Corp*., No. 3:03-CV-0327, 2006 WL 696180, at *3 (D. Nev. March 15, 2006). Also, studies that the Supreme Court has relied on in determining who is a person with a disability suggest that carrying is a major life activity. *See Sutton*, 527 U.S. at 485.

[33] 29 C.F.R. Part 1630 App., § 1630.2(i).

[34] 29 C.F.R. § 1630.2(i).

more than five pounds indicated belief that plaintiff was substantially limited in lifting).

    7.    <u>Plaintiff's Substantial Limitation in Running</u>

The Supreme Court has recognized that running is a major life activity, stating that "individuals who use prosthetic limbs . . . may be mobile and capable of functioning in society but still be disabled because of a substantial limitation on their ability to walk *or run*." *Sutton,* 527 U.S. at 487 (emphasis added). Other courts have expressly recognized running as a major life activity. *See, e.g., Bartlett v. New York State Bd. of Law Examiners*, 226 F.3d 69, 81 (2d Cir. 2000); *Prince v. Claussen*, 1999 WL 152282, at *5 (10th Cir. 1999) (unpublished) ("Prince maintains his impairments have implicated his ability to walk, stand, run, lift, throw, squat, and work.  Each constitutes a major life activity under the ADA."); *Johnson v. City of Pontiac*, 2007 WL 1013247, at *3 (E.D. Mich. Mar. 30, 2007); *Bartlett v. New York State Bd. of Law Examiners*, No. 93-Civ.-4986, 2001 WL 930792, at *31 (S.D.N.Y. Aug. 15, 2001) ("For example, individuals who use prosthetic limbs or wheelchairs may be mobile and capable of functioning in society but still be disabled because of a substantial limitation on their ability to walk or run"); *Carbaugh v. Pangborn Corp.*, No. JFM-00-2719, 2001 WL 121769, at *4 (D. Md. Feb. 12, 2001) ("Although employees who use prosthetic limbs, wheelchairs, or scooters may be substantially or completely limited in their ability

to walk or run, they may also be highly mobile and capable of functioning in society. The ADA covers these employees."); *Riebe v. E-Z Serve Convenience Stores, Inc.*, No. 00-0358-P-C, 2000 WL 1566516, at *3 (S.D. Ala. Sept. 29, 2000); *Finical v. Collections Unlimited, Inc.*, 65 F. Supp. 2d 1032, 1039 (D. Ariz. 1999) (stating that the loss of a limb generally will continue to substantially limit the major life activities of walking and running).  *See also Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1227 (11th Cir. 1999) (assuming that running is a major life activity); *Davis v. City of Grapevine*, 188 S.W.3d 748, 762 (Tex. App.–Fort Worth 2006, *pet. denied*) ("Having reviewed these cases, we conclude that running does constitute a major life activity within the meaning of the ADA and Chapter 21").[35]

This is also consistent with EEOC guidance, which defines major life activities as "those basic activities that the average person in the general population can perform with little or no difficulty."  29 C.F.R. Part 1630 App., §1630.2(i). Running is such an activity.  Moreover, the fact that most people may not run on a daily basis is immaterial; there is no requirement that a major life activity be a daily activity.  *Bragdon*, 524 U.S. at 638.  Nor need it be something that everyone does.  Under *Bragdon*, for example, reproduction is a major life activity even

---

[35] There is contrary authority, however.  *See, e.g., Williams v. Square D Co.*, No. 304-CV-0162D, 2005 WL 2219237, at *5 (N.D. Tex. Sept. 13, 2005) (decided under Texas state law).

though many choose not to engage in it.  *See id.*, at 641 ("In the end, the disability definition does not turn on personal choice.").

The evidence is both clear and uncontested in this case that Ms. Blummer cannot run at all, even to jog.  Ex. J (Blummer Dep. 186:6–7).  Thus, she has a disability as a matter of law because running is a major life activity.

8.   Plaintiff's Substantial Limitation in Working

Working is a major life activity under the ADA.  *E.E.O.C. v. R.J. Gallagher Co.*, 181 F.3d 645, 654–655 (5th Cir. 1999).

A substantial limitation in working means a significant restriction in the ability to perform either a class of jobs, or a broad range of jobs in various classes, as compared to the average person having comparable training, skills and abilities. 29 C.F.R. § 1630.2(j)(3)(i).  A class of jobs is defined as including jobs utilizing similar training, knowledge, skills or abilities.  29 C.F.R. § 1630.2(j)(3)(ii)(B). Classes of jobs include, for example, semi-skilled jobs[36] or heavy labor jobs.[37]  A "broad range" of jobs refers to jobs that do not utilize similar training, knowledge, skills or abilities.  29 C.F.R. § 1630.2(j)(3)(ii)(C).

---

[36] 29 C.F.R. Part 1630 App. § 1630.2(j).

[37]  29 C.F.R. Part 1630 App. § 1630.2(j); EEOC Compliance Manual § 902.8(f); A Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act, § 2.1(a)(iii) (EEOC Jan. 1992) ("A person would be considered significantly restricted in a "class of jobs" if a back condition prevents him from working in any heavy labor job.").

In addition to the condition/manner/duration factors listed above, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of working: (1) the geographical area to which the individual has reasonable access; (2) the job from which the individual has been disqualified, and the number and types of jobs utilizing similar training, knowledge skills or abilities from which the individual is also disqualified (class of jobs); and/or (3) the number and types of other jobs not utilizing similar training, knowledge, skills or abilities from which the individual is also disqualified (broad range of jobs in various classes). 29 C.F.R. § 1630.2(j)(3)(ii); *Chollett v. Patterson-UTI Drilling Services, LP,* No. V-08-27, 2009 WL 4667575, at *8–9 (S.D. Tex. Dec. 1, 2009). *See also Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 11–13 (1st Cir. 1999).[38]

This evidentiary burden on Ms. Blummer is minimal. 29 C.F.R. Part 1630 App. § 1630.2(j); *E.E.O.C. v. Heartway Corp.*, 466 F.3d 1156, 1163–1164 (10th Cir. 2006) ("class of jobs" and "broad range of jobs" are objective standards and do not require an onerous evidentiary showing). In assessing the "number" of jobs from which a person might be excluded by an impairment, it is only necessary to indicate an approximate number of jobs from which an individual would be

---

[38] Note, however, that consideration of these vocational factors is not always required, and the Plaintiff may make a sufficient showing "based on evidence of the nature of the impairment itself, as well as other circumstances." *Leslie v. St. Vincent New Hope, Inc*., 916 F. Supp. 879, 885 (S.D. Ind. 1996).

excluded (such as "few," "many," "most"), compared to an average person with similar training, skills and abilities, to show that the individual would be significantly limited in working.  *Id*.; EEOC Technical Assistance Manual, § 2.1(a)(iii).  For example, in *Wheaton v. Ogden Newspapers, Inc.*, vocational expert testimony that a person's back condition prevented her from performing jobs within the medium, heavy, and very heavy labor classifications was sufficient to show a significant restriction in a broad range of jobs.  66 F. Supp. 2d 1053, 1063–1064 (N.D. Iowa 1999).  *See also Babb v. San Francisco Newspaper Agency*, 1996 WL 788377, at *3 (N.D. Cal. Oct. 16, 1996) (ADA should not be interpreted to deny protection to plaintiff capable of working but unable to perform class of "heavy lifting" jobs).

Ms. Blummer is *not* required to show that no employment opportunities exist; instead, the test is whether the particular impairment (or perceived impairment) constitutes a significant barrier to employment for that individual. *Duffett v. Mineta*, 432 F. Supp. 2d 293, 299 (E.D.N.Y. 2006).  Thus, the fact that an employee could perform a particular job does not mean that the person is not substantially limited in working.  *Chevron Phillips*, 570 F.3d at 619; *Joffer v. Premier Bankcard Inc*., No. 06-4265-KES, 2008 WL 2371149, at *5 (D.S.D. June 6, 2008).

Although a vocational expert is not required to show the number or percentage of jobs that the individual is unable to perform, *Mullins v. Crowell*, 228 F.3d 1305, 1314 n.18 (11th Cir. 2000), Ms. Blummer has such expert testimony in this case.

Ms. Blummer's vocational expert Joyce Shoop, M.S., C.R.C., L.P.C., testified that Ms. Blummer is precluded from many jobs her own career field, a class of jobs, and from several broad classes of jobs that require physical labor, based on the limitations imposed by her treating physician as a result of her medical conditions.   According to Ms. Shoop, Ms. Blummer would also be precluded from a broad range of jobs in various classes of jobs compared with the average person with comparable skills and abilities, because she would be limited to unskilled and semiskilled sedentary jobs, along with sedentary aerospace engineering jobs, which together constitutes only 4.6% of the job market in Texas. Finally, Ms. Shoop summarizes that Ms. Blummer is a "person who is substantially limited in working."   Ex. H (Shoop Decl., and attached Exh. B Vocational Assessment 5).   In other words, Ms. Blummer's impairments exclude her from over 95% of available jobs.

The Defendant has offered no contrary expert testimony.  Its sole expert, G. Whitney Smith, denies expertise in either the medical or vocational-rehabilitation

fields, and thus admits that he "must accept the opinion of Blummer's experts at face value."  Ex K (Smith Rep. 12)

The percentage of jobs that Ms. Blummer is precluded from performing by her impairment meets or exceeds the level found in other cases to constitute a substantial limitation in working.  *See, e.g., Black v. Roadway Express, Inc*., 297 F.3d 445, 453 (6th Cir. 2002) ("[P]laintiff was significantly restricted in his ability to perform a class of jobs or a broad range of jobs in various classes where his injury precluded him from performing at least **fifty percent** of the jobs previously available to him."); *Dalton v. Subaru-Isuzu Automotive, Inc*., 141 F.3d 667, 676 (7th Cir. 1998) (sufficient evidence of significant restriction in abroad range of jobs based on expert testimony that impairments reduced the jobs available to plaintiffs by **between 35% and 89%**); *Allen v. Hamm*, 2006 WL 436054 (D. Md. 2006) (evidence that plaintiffs could perform only **11% to 60.6%** of jobs was sufficient to show disability), *aff'd on other grounds*, Nos. 06-1379, 06-1380, 2007 WL 1430219 (4th Cir. May 10, 2007) (unpublished); *Ross v. Alegent Health*, 380 F. Supp. 2d 1029, 1037 (S.D. Iowa 2005) (**84% of nursing jobs** is a broad range of jobs); *Haysman v. Food Lion, Inc*., 893 F. Supp. 1092, 1101 (S.D. Ga. 1995) (vocational expert testified that plaintiff was limited to sedentary work, and thus was precluded from **90%** of jobs in national economy); *Scharff v. Frank*, 791 F.

Supp. 182, 186–187 (S.D. Ohio 1991) (vocational expert testified that plaintiff would be prevented from performing **one-half** of unskilled jobs in local economy).

For all of the above reasons, Ms. Blummer is a person with a disability under the law.

### B. Ms. Blummer Met Her Administrative Obligations by Properly Filing a Charge of Discrimination with the EEOC and the TWC

In an action for employment discrimination a plaintiff must exhaust administrative remedies before bringing the claim to federal court.[39]   Exhaustion requires that the plaintiff file a discrimination charge with the EEOC, or with the state or local agency with the power to seek relief from the alleged unlawful action, and receive a notice of right-to-sue.  *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788–789 (5th Cir. 1996).   Texas state law is the similar.  *See, e.g., Vielma v. Eureka Co.*, 218 F.3d 458 (5th Cir. 2000).

Here, Ms. Blummer has met all of her administrative obligations in order to file suit.  She was denied accommodation on November 1, 2007, and fired the next day.  Ex. A (Blummer Aff. 5-6).  She signed her charge of disability discrimination in front of a Notary on April 23, 2008, and it was mailed to the Equal Employment Opportunity Commission, and to the Texas Workforce Commission, on April 24, 2008.  Ex. A (Blummer Aff. and attached Ex. A 6). It was received by them on

---

[39] The ADA incorporates by reference the procedures applicable to Title VII claims.  42 U.S.C. § 12117(a).

April 28, 2008, which is within 180 days of the adverse action. *Id.* On December 11, 2008, she received her notice of right to sue from the Texas Workforce Commission's Civil Rights Division. Ex. A (Blummer Aff. and attached Ex. B 6). On January 30, 2009, Ms. Blummer received her notice of right to sue from the EEOC. Ex. A (Blummer Aff. and attached Ex. C 6). She has met these administrative obligations in a timely manner, and has thus exhausted all administrative remedies.

Defendant has never provided any evidence through discovery to show that Ms. Blummer has not exhausted all of her administrative remedies. By contrast, Ms. Blummer has demonstrated that her administrative obligations have been met. Therefore, summary judgment on this issue is appropriate.

## C. Ms. Blummer Timely Filed Her Lawsuit within the Applicable Statute of Limitations

By reference to Title VII procedures, an ADA plaintiff is required to file a lawsuit within ninety days of receiving a right-to-sue notice based on a charge of discrimination filed with the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Taylor v. Books-A-Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). Under state law, suit must be filed within 60 days of receipt of the TWC's right-to-sue notice. Tex. Lab. Code § 21.254.

Here, Ms. Blummer has filed her lawsuit within the required statue of limitations.  She received her state law right to sue through her attorney of record on December 11, 2008.  Ex. A (Blummer Aff. and attached Ex. B 6).  She received her EEOC right to sue through her attorney of record on January 30, 2009.  Ex. A (Blummer Aff. and attached Ex. C 6).  She filed this action on February 5, 2009, well within sixty days of her receipt of both notices.

Defendant has not offered any evidence suggesting that Ms. Blummer has not filed her complaint within the statute of limitations required by law.  Instead, Ms. Blummer has demonstrated that she has timely filed her complaint.  Therefore, summary judgment on this issue is appropriate.

### D. Defendant's Argument that Ms. Blummer's Claim is Frivolous and Made in Bad Faith is Inapplicable to the Facts of this Case

Defendant contends that Ms. Blummer's claim is frivolous and made in bad faith.  In ADA cases, as under Title VII, the defendant may obtain a fee award only if the plaintiff's suit is "frivolous, unreasonable, or without foundation." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 635 (2001), *citing Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 421 (1978); *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 472 (5th Cir. 2009).  Moreover, "bad faith" is the standard for Rule 11 violations, and can only be imposed only if the position can fairly be said to be unreasonable

from the point of view of both existing law and possible extension, modification or reversal. *Eber v. Harris County Hosp. Dist.*, 130 F. Supp. 2d 847, 872 (S.D. Tex. 2001) (ADA case).

In this case, Ms. Blummer's claims are clearly based in law and supported by facts. She has a disability as defined by the ADA. Ex. A (Blummer Aff. 1-3); Ex. C (Lindaman Decl, and attached Exh. B Rep. 1-3). She disclosed it, and requested accommodations for it (similar to those she had been given at other employment in the industry), but they were denied, and she was instead immediately fired. This states a valid claim under the ADA and Chapter 21. Ex. A (Blummer Aff. 3-6).

Defendant has not offered any evidence to support its claim that Ms. Blummer's complaint is "frivolous" or brought in "bad faith." Summary judgment should be granted Plaintiff on this issue.

### E.   Defendant Failed to Overcome the Heavy Burden of Demonstrating that Ms. Blummer Failed to Mitigate Her Damages

The Defendant has the burden of proving the failure to mitigate damages, and to do so it must demonstrate that substantially equivalent work was available, and that the plaintiff did not exercise reasonable diligence to obtain it. *See, e.g., Miles-Hickman v. David Powers Homes, Inc.*, 613 F. Supp. 2d 872, 887 (S.D. Tex. 2009), *citing Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990).

"The employer must show not only that the plaintiff failed to exercise reasonable diligence, but that there were jobs available which plaintiff could have discovered and for which she was qualified." *Id.*, *citing Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972).

Defendant bears a heavy burden of establishing the failure-to-mitigate defense, *Washington v. Davis*, No. 01-1863, 2002 WL 1798764, at *3 (E.D. La. Aug. 5, 2002) ("This is a very heavy burden, and will be met only upon a showing that the plaintiff's actions were unreasonable.").  The Defendant has not met that standard.

After her firing on November 2, 2007, Plaintiff immediately began looking for work.  She undertook some "mystery shopper" work outside her area of training, but was unable to find another aerospace engineer job until April 20, 2009 when she was hired by GB Tech, Inc. Ex. A (Blummer Aff. 7-8).  During the entire time of her unemployment, however, she sought such a position.  For example, she attended a job fair hosted by Lockheed, at which she distributed her resumé. *Id.*; Ex. J (Blummer Dep. 52:13-25, Oct. 27, 2009).  She scoured the internet for job leads, accessed resources through the Texas Workforce Commission ("TWC"), made inquiries and phone calls, and submitted applications and resumés to several different companies in her field, including Barrios, Lockheed, USA, Boeing, Northrop Grumman, and Odyssey, from whom she sought positions that fit her

background, education, and experience. Ex. A (Blummer Aff. 7-8);   Ex. J

(Blummer Dep. 51:9-25).  Defendant has not produced any evidence that refutes

these efforts by Plaintiff.

To prove its defense, the Defendant is required to establish that substantially

equivalent work was available, meaning "[e]mployment which affords virtually

identical promotional opportunities, compensation, job responsibilities, working

conditions, and status as the position from which the Title VII claimant has been

discriminatorily terminated."   *Sellers*, 902 F.2d at 1193 (internal quotes and

citations omitted).  Here, Defendant did not provide any evidence illustrating the

comparison between Ms. Blummer's position at USA and other aerospace jobs

actually available.  The Defendant's expert simply discusses future trends in the

Plaintiff's field, rather than actual, equivalent job availability during the time that

she was unemployed.  He also concludes that she was qualified for the positions of

Customer Service Representative, Technical Writer and Statistical Assistant,

without any showing that these positions would be substantially equivalent to the

one Ms. Blummer held at USA, or were actually available at the relevant time.  *See*

Ex. K (Smith Rep. 7-8). This data is insufficient.  *See, e.g. Caufield v. Ctr. Area*

*Sch. Dist.*, 133 Fed. Appx. 4, 11–12 (3d Cir. 2005) (citing the Fifth Circuit's

*Sellers* standard in holding that merely listing open teaching jobs did nothing to

show that they were substantially equivalent teaching positions).   Therefore, the

46

Defendant has not provided the evidence needed to raise a genuine issue of fact regarding the equivalent work available to Ms. Blummer.

Of course, Ms. Blummer is not obligated to find work that is not comparable to her previous position. *Vaughn v. Sabine County*, 104 Fed. Appx. 980, 984 (5th Cir. 2004). Ms. Blummer's expert concluded that as a result of her disability, her education, skills, and background, she is qualified for sedentary work. Ex. H (Shoop Decl., and attached Vocational Assessment 5). Once again, Defendant has the burden to demonstrate that comparable employment existed for which she was qualified, given these limitations. Jobs that would require Ms. Blummer to perform tasks outside her range of her physical abilities would not constitute suitable, equivalent, alternate work. *See, e.g., Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 496–497 (8th Cir. 2002) (job qualifications in mitigation analysis include considerations related to plaintiff's disability); *Loubrido v. Hull Dobbs Co. of Puerto Rico*, 526 F. Supp. 1055, 1061 (D.P.R. 1981) ("Undoubtedly, plaintiff could not be expected to mitigate his damages by searching for a job which he could not perform because of his disability."); *Picinich v. UPS*, 583 F. Supp. 2d 336, 341 (N.D.N.Y. 2008), *aff'd* 318 Fed. Appx. 34 (2d Cir. 2009) (court used plaintiff's physical limitations as factor in assessing whether suitable employment was available).

47

To the extent Defendant relies on Plaintiff's decision not to apply for a particular position with Barrios in 2007 as evidence that substantially equivalent work was available, Ex. K (Smith Rep. 5-6), Defendant offers no evidence that the position was "equivalent," or that Plaintiff met the qualifications for the position. In fact, the job description indicated that the position required lifting of 25-pound weights, which is beyond the Plaintiff's capacity.  She is limited to sedentary work, and has only ever had desk-type job.  Also, it involved "console" work at NASA's Mission Control, and those positions prohibit the use of medications of the type that the Plaintiff takes to control pain.  Exh. A (Blummer Aff. 8); Ex. J (Blummer Dep. 285:19–25).  This position could not constitute substantially equivalent work. Moreover, the fact that the plaintiff did not apply to one specific employer "does not establish that she failed to exercise other reasonable efforts to obtain employment."  *Miles-Hickman*, *supra*, 613 F. Supp. 2d at 888.

Even if the Defendant were not required to prove that substantially equivalent employment was available, it still must prove that the Plaintiff failed to make reasonable efforts to find such work.  Under the fact in this case, however, Ms. Blummer's job-search efforts were reasonably diligent as a matter of law.

For example, the employer fails to meet its burden of proving the lack of reasonable effort when the plaintiff testified that she contacted the Texas Workforce Commission and applied for work under their program, contacted

several employment websites (such as monster.com), registered with a local job line, sent out resumés, interviewed with employers, and registered with temporary staffing services. *Miles-Hickman*, *supra*, 613 F. Supp. 2d at 887–888.  Those facts are nearly identical to the ones in the instant case.  *See also Dibler v. Metwest, Inc.*, No. 3:95-CV-1046, 1997 WL 222910, at *2 (N.D. Tex. April 29, 1997) (ADA plaintiff used reasonable diligence in her job search where she was unemployed for ten months and she called colleagues, attended a seminar, sent resumés, networked, and answered want ads).

Defendant's expert concludes that Ms. Blummer's job search was unreasonable due to the small number of employer contacts, and the use of an Internet-based job search. Ex. K (Smith Rep. 12).   However, Internet-based searching, which the courts in this district have recognized is part of a reasonable mitigation efforts, *Miles-Hickman*, *supra*, 613 F. Supp. 2d at 887–888, was only one part of the Plaintiff's methods.  In addition, she applied for more positions than are indicated by the TWC records.  Ex. M (Pl.'s Resp. to Def.'s Interrog. # 10) ("Ms. Blummer has made numerous inquiries, phone calls and sent numerous resumes in an attempt to find employment…**Although this list is not an all inclusive list**, Ms. Blummer did multiple searches in the following websites for job leads…).

Asserting that Plaintiff should have made more employer contacts is insufficient. Defendant offered no evidence that more employers with substantially equivalent positions were actually available. *See, e.g., Decorte v. Jordan*, No. 03-1239, 2005 WL 1431699, at *2 (E.D. La. May 26, 2005) (expert testified only as to number of resumés that should have been sent each week, without further demonstrating that those numbers corresponded to employers with vacant positions for which plaintiffs were qualified.)

In addition, although a limited amount of data on the unemployment rates in the Gulf Coast area is provided in Defense expert's report, *e.g.* Ex. K (Smith Rep. 10), he neglected to account for the impact of the economic downturn, which has affected the job market in most industries, in particular including the space industry. This information is necessary to provide an accurate picture of the job market available to Ms. Blummer. *See, e.g. Griffin v. Washington Convention Ctr.*, No. 93-2297, 2000 WL 1174967, at *4 (D.D.C. July 21, 2000) (Defendant unsuccessful at demonstrating that plaintiff failed to exercise reasonable diligence where it failed to produce evidence as to general economic conditions).

Defendant has not met its evidentiary burden required to raise a genuine issue of fact in regards to Ms. Blummer mitigating her damages. The information that Defendant has offered is insufficient to "properly preclude the entry of summary judgment." *Anderson* at 248. The only evidence offered by Defendant

during discovery, their expert report, does not show that Ms. Blummer's actions following her termination from USA were unreasonable. Also, Defendant did not establish that further job search efforts would have yielded suitable employment for her. In addition, Defendant failed to demonstrate that Ms. Blummer was qualified for any of the positions listed that were outside the field of aerospace engineering, or that they were comparable to the one she held at USA. Moreover, projections regarding future *trends* in the job market are not sufficient to establish the availability of substantially equivalent positions during the period that Ms. Blummer was actually unemployed. Finally, given the limitations in the area of working due to the nature of Ms. Blummer's disability, Defendant has the burden to prove that available jobs were suitable for her abilities. Since Defendant did not overcome the heavy burden necessary to demonstrate that Ms. Blummer failed to mitigate damages, summary judgment is appropriate on this issue.

### F.    The After-Acquired Evidence Doctrine Is Not a Bar to Plaintiff's Claim, Nor Is It Applicable in This Case

In its Eighth Defense USA alleges that "Plaintiff's lawsuit and alleged damages are barred and/or limited by the after-acquired evidence doctrine."

First, as a matter of law the after-acquired evidence doctrine clearly does not bar Ms. Blummer's *lawsuit*. As the Supreme Court unanimously held, the doctrine is not a complete bar to recovery because otherwise it would thwart the remedial

purpose of antidiscrimination laws.  *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 356 (1995).[40]

Nor should it apply to the recovery of mental-anguish or punitive damages. *Johnson v. G.D.F., Inc.*, No. 07-C-3996 2008 WL 4225836, at *2 (N.D. Ill. Sept. 12, 2008); *Douglas v. DynMcDermott Petroleum Operations Co.*, No. 95-1967, 650899 1996 WL, at *3 (E.D. La. Nov. 7, 1996).  *See also Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F. Supp. 667, 683 (S.D.N.Y. 1995).  This is also consistent with EEOC Guidance.  "Enforcement Guidance on After-Acquired Evidence and McKennon v. Nashville Banner Publishing Co.," § III(B)(1) and (2) (EEOC July 6, 2000).[41]  Although there is contrary authority, it would still only bar compensatory damages that accrued *after* defendant learned about the after-acquired evidence.  *Compare Cross v. Samper*, 501 F. Supp. 2d 59, 64–65 (D.D.C. 2007).

Instead, its relevance is that it may serve to prevent front pay, and may limit any back-pay award to the wages that Ms. Blummer would have earned from the

---

[40] Although *McKennon* was decided in the ADEA context, its analysis was based in part on the ADEA's similarity to Title VII, *McKennon, supra*, 513 U.S. at 357–358, and it thus apples in Title VII cases as well.  *See, e.g., McCray v. DPC Industries, Inc.*, 875 F. Supp. 384, 388 (E.D. Tex. 1995). *See also Weeks v. Coury*, 951 F. Supp. 1264, 1274 (S.D. Tex. 1996) (applying *McKennon* in Title VII context). The ADA incorporates Title VII's procedural and remedial scheme, 42 U.S.C. § 12117(a), and the two statutes also have similar language, purposes, and remedial structure. *Flowers v. Southern Regional Physician Services Inc.*, 247 F.3d 229, 234 (5th Cir. 2001). It is therefore appropriate to apply *McKennon* in ADA cases.  *See, e.g., Stone v. La Quinta Inns, Inc.*, 942 F. Supp. 261, 266 n.4 (E.D. La. 1996). The EEOC agrees.  Enforcement Guidance on After-Acquired Evidence and McKennon v. Nashville Banner Publishing Co. (EEOC July 6, 2000), http://www.eeoc.gov/policy/docs/mckennon.html.

[41] Available online at http://www.eeoc.gov/policy/docs/mckennon.html.

day he was terminated to the day the misconduct was discovered. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 362 (1995); *Johnson, supra*, 2008 WL 4225836, at *2.

Having established the limited nature of the doctrine, the Court can focus on the more important issue—there simply was no after-acquired evidence in this case. That is, there is no evidence of wrongdoing by Ms. Blummer sufficient to merit termination, and which was not discovered by the Defendant until after she filed this lawsuit.

Of course, Defendant has the burden of proving its defense of after-acquired evidence. *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362–363 (1995), *cited in Smith v. Berry Co.*, 165 F.3d 390, 395 (5th Cir. 1999).[42] To do so the Defendant must establish that after litigation commenced, it discovered wrongdoing by Ms. Blummer that was of such severity that she would have been terminated on those grounds alone if the Defendant had known of it at the time of the discharge. *McKennon, supra*, 513 U.S. at 362–363.

---

[42] Most courts hold that after-acquired evidence is an affirmative defense. *See, e.g., Wilken v. Cascadia Behavioral Healthcare, Inc.*, No. CV 06-195-ST, 2008 WL 44648, at *4 (D. Or. Jan. 2, 2008); *Gorman v. Meeder Financial Services, Inc.*, No. 04-00499, 2007 WL 1657188, at *7 (D.N.J. June 5, 2007); *Stubbs v. Regents of University of California*, No. CIV. S-06-1 KK/DAD, 2007 WL 1532148, at *8 (E.D. Cal. May 25, 2007); *Quinn v. City of Bel Aire, Kan.*, No. 05-1373-JTM, 2006 WL 2433851, at *2 (D. Kan. Aug. 21, 2006); *Santos v. Boeing Co.*, No. 02 C 9310, 2004 WL 2005817, at *7 (N.D. Ill. Sept. 2, 2004); *Red Deer v. Cherokee County, Iowa*, 183 F.R.D. 642, 653 (N.D. Iowa 1999). Even if it is not an affirmative defense, the defendant clearly bears the burden of proving it. *See E.E.O.C. v. Morgan Stanley & Co., Inc.*, No. 01 Civ. 8421(RMB)(RLE), 2002 WL 31778779 (S.D.N.Y. Dec. 11, 2002).

In the instant case Ms. Blummer denies any such conduct. Ex. A (Blummer Aff. 6). Moreover, the Defendant has not come forward with evidence of any such conduct.[43] For this reason, the defense should be dismissed.

### G. Plaintiff's Damages Were Caused by Defendant's Discriminatory Actions, Not by Plaintiff Or Any Third Party

In its ninth Defense USA alleges that "Plaintiff's damages, if any, were caused and/or were solely caused by Plaintiff's own conduct and/or by third parties." There is absolutely no evidence supporting such pleading. This case is based on the Defendant's failure to accommodate Ms. Blummer, and on its termination of her. Defendant does not dispute that it was her employer, Ex. B (Robbins Dep. 27:4-6), and by its own admission it made the decision to deny accommodations, Ex. E (Lee Dep. 61:6-19), Ex. F (Alaniz Dep. 63:5-14) and to fire her. Ex. E (Lee Dep. 77:25 – 78:8), Ex. B (Robbins Dep. 80:20-25.) No third party was responsible for its decisions, and the Court should strike this defense.

### VI. CONCLUSION

For the reasons cited above, and based on the evidence presented herein, Ms. Blummer respectfully requests that her Motion for Partial Summary Judgment be granted in its entirety.

---

[43] In Defendant's Objections and Answers to Plaintiff's First Set of Interrogatories, Defendant responds that it would supplement with information regarding their defense that Plaintiff lawsuit is barred and/or limited by the after-acquired evidence doctrine. However Defendant never supplemented this answer. *See* Ex. N (Def.'s Resp. to Pl.'s Interrog. # 14.)

Respectfully submitted,


  /s/ Lucia Romano Ostrom
LUCIA ROMANO OSTROM
Attorney in Charge
Texas Bar No. 24033013
Southern Dist. of Texas No. 690123
ADVOCACY, INC.
1500 McGowen, Ste. 100
Houston, Texas 77004
(713) 974-7691 Phone
(713) 974-7695 Fax

BRIAN EAST
Texas Bar No. 06360800
ADVOCACY, INC.
7800 Shoal Creek Blvd., Ste. 171E
Austin, Texas78757
(512) 454-4816 Phone
(512) 454-3999 Fax

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2010, a true and correct copy of the foregoing document, in electronic form, was sent to the person listed below in accordance with the Local Rules for the U.S. District Court for the Southern District of Texas:

>   Michael D. Mitchell
>   Flyn L. Flesher
>   Ogletree, Deakins, Nash, Smoak & Steward, P.C.
>   One Allen Center
>   500 Dallas Street, Suite 3000
>   Houston, Texas 77002-4709

>   /s/ Lucia Romano Ostrom
>   Lucia Romano Ostrom